UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| NADIA OLENIAK, ALI EVANS, and KIM PORTER, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>TIME WARNER CABLE INC, TIME WARNER ENTERTAINMENT COMPANY LP, TIME WARNER CABLE LLC, and TIME WARNER NY CABLE LLC D/B/A TIME WARNER CABLE SHARED SERVICES,<br><br>Defendants. | Civil Action No. 12-CV-3971 (KPF) |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS'
MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT,
PROVISIONAL CERTIFICATION OF THE SETTLEMENT CLASS,
APPOINTMENT OF PLAINTIFFS' COUNSEL AS CLASS COUNSEL, AND
APPROVAL OF PROPOSED NOTICE OF SETTLEMENTS**

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................1

FACTUAL AND PROCEDURAL BACKGROUND ..............................................2

    I.    Procedural History ................................................................................2

    II.   Overview of Investigation and Discovery................................................2

    III.  Settlement Negotiations.......................................................................3

SUMMARY OF THE SETTLEMENT TERMS.......................................................4

    I.    The Settlement Amount.......................................................................4

    II.   Releases .............................................................................................5

    III.  Eligible Employees..............................................................................5

    IV.  Allocation Formula.............................................................................5

    V.   Attorneys' Fees and Litigation Costs ...................................................6

    VI.  Service Awards...................................................................................7

    VII. Settlement Claims Administrator .........................................................8

CLASS ACTION SETTLEMENT PROCEDURE ..................................................8

ARGUMENT..........................................................................................................10

    I.    Preliminary Approval of the Settlements Is Appropriate .....................10

        A.   The Settlements Are Fair, Reasonable, and Adequate ....................11

            1.   Litigation Through Trial Would be Complex, Costly, and Long (*Grinnell* Factor 1) ...............................................................11

            2.   The Reaction of the Class Has Been Positive (*Grinnell* Factor 2) .............12

            3.   Discovery Has Advanced Far Enough to Allow the Parties to Resolve the Case Responsibly (*Grinnell* Factor 3) .........................................................12

            4.   Plaintiff Would Face Real Risks if the Case Proceeded (*Grinnell* Factors 4 and 5)............................................................................................12

5.  Establishing a Class and Maintaining it Through Trial Would Not Be Simple (*Grinnell* Factor 6) ............................................................................. 13

6.  Defendants' Ability to Withstand a Greater Judgment is Not Clear (*Grinnell* Factor 7) ............................................................................. 14

7.  The Settlement Funds are Substantial, Even in Light of the Best Possible Recovery and the Attendant Risks of Litigation (*Grinnell* Factors 8 and 9) ............................................................................. 15

II.   Conditional Certification of the Rule 23 Class Is Appropriate ........................................ 16

A.   Numerosity ............................................................................. 18

B.   Commonality ............................................................................. 18

C.   Typicality ............................................................................. 19

D.   Adequacy of the Named Plaintiff ............................................................................. 20

E.   Certification is Proper Under Rule 23(b)(3) ............................................................................. 21

1.   Common Questions Predominate ............................................................................. 21

2.   A Class Action is a Superior Mechanism ............................................................................. 22

III.   The Court Should Approve the FLSA Settlement ............................................................................. 22

IV.   Plaintiffs' Counsel Should Be Appointed as Class Counsel ............................................................................. 23

V.   The Proposed Notices are Appropriate ............................................................................. 24

A.   The Proposed Notices Satisfy Due Process ............................................................................. 24

B.   The Notice Plan and Award Distribution Processes Are Appropriate ............................................................................. 25

CONCLUSION ............................................................................. 25

# TABLE OF AUTHORITIES

CASES                                                                    PAGE(S)

*Amchem Prods., Inc. v. Windsor,*
   521 U.S. 591 (1997) ......................................................................................... 16

*In re Austrian & German Bank Holocaust Litig.,*
   80 F. Supp. 2d 164 (S.D.N.Y. 2000) ................................................................ passim

*City of Detroit v. Grinnell Corp.,*
   495 F.2d 448 (2d Cir. 1974) ............................................................................. passim

*Clark v. Ecolab Inc.,*
   Nos. 07 Civ. 8623, 2010 WL 1948198 (S.D.N.Y. May 11, 2010) ..................... passim

*Comcast v. Behrend,*
   2013 WL 1222646 (March 27, 2013) ...................................................................... 14

*Consol. Rail Corp. v. Town of Hyde Park,*
   47 F.3d 473 (2d Cir. 1995) ...................................................................................... 18

*Cordes & Co. Fin. Servs., Inc. v. A.G. Edwards & Sons, Inc.,*
   502 F.3d 91 (2d Cir. 2007) ...................................................................................... 21

*County of Suffolk v. Long Island Lighting Co.,*
   710 F. Supp. 1422, 1424 (E.D.N.Y. 1989) ............................................................. 17

*Damassia v. Duane Reade, Inc.,*
   250 F.R.D. 152 (S.D.N.Y. 2008) ............................................................................. 22

*Damassia v. Duane Reade, Inc.,*
   No. 04 Civ. 8819, No. 06 Civ. 2295, 2009 WL 5841128 (S.D.N.Y. July 27, 2009) ............... 7

*D'Amato v. Deutsche Bank,*
   236 F.3d 78 (2d Cir. 2001) ...................................................................................... 11

*Denny v. Deutsche Bank AG.,*
   443 F.3d 253, 268 (2d Cir. 2006) ........................................................................... 20

*Diaz v. Eastern Locating Serv. Inc.,*
   No. 10 Civ. 4082, 2010 WL 2945556 (S.D.N.Y. July 22, 2010) .............................. 20

*Dziennik v. Sealift, Inc.,*
   No. 05 Civ. 4659, 2007 WL 1580080 (E.D.N.Y. May 29, 2007) ............................. 20

*In re EVCI Career Colls. Holding Corp. Sec. Litig.,*
No. 05 Civ. 10240, 2007 WL 2230177 (S.D.N.Y. July 27, 2007) ........................................... 10

*Frank v. Eastman Kodak Co.,*
228 F.R.D. 174 (W.D.N.Y. 2005) ........................................................................................ passim

*In re Gen. Motors Corp. Pick-up Truck Fuel Tank Prod. Liab. Litig.,*
55 F.3d 768 (3d Cir. 1995) ................................................................................................. 17

*Gen. Tel. Co. of Southwest v. Falcon,*
457 U.S. 147 (1982) ........................................................................................................... 18

*Gillings v. Time Warner Cable LLP,*
No. CV 10-5565-AG(RNBx), 2012 WL 1656937 (C.D. Cal., Mar. 26, 2012) ..................... 13

*Green v. Wolf Corp.,*
406 F.2d 291 (2d Cir. 1968) ............................................................................................... 22

*Hanlon v. Chrysler Corp.,*
150 F.3d 1011 (9th Cir. 1988) ........................................................................................ 16, 18

*In re IPO Sec. Litig.,*
471 F.3d 24, 41-42 (2d Cir. 2006) ...................................................................................... 17

*Joel A. v. Giuliani,*
218 F.3d 132 (2d Cir. 2000) ............................................................................................... 16

*Johnson v. Brennan,*
10 Civ. 4712 CM, 2011 WL 4357376 (S.D.N.Y. Sept. 16, 2011) ..................................... 16

*Lindsay v. Government Employees Ins.Co.,*
251 F.R.D. 51, 57 (D.D.C. 2008) ....................................................................................... 17

*Lynn's Food Stores, Inc. v. United States,*
679 F.2d 1350 (11th Cir. 1982) ...................................................................................... 10, 23

*Marisol A. v. Giuliani,*
126 F.3d 372 (2d Cir. 1997) ........................................................................................... 17, 19

*Marriott v. County of Montgomery,*
227 F.R.D. 159 (N.D.N.Y. 2005) ...................................................................................... 21

*Maywalt v. Parker & Parsley Petroleum Co.,*
67 F.3d 1072 (2d Cir. 1998) ............................................................................................... 10

*In re Michael Milken & Assocs. Sec. Litig.,*
150 F.R.D. 57 (S.D.N.Y. 1993) .......................................................................................... 24

iv

*Morano v. Intercontinental Capital Grp., Inc.*,
No. 10 Civ. 2192, 2012 WL 2952893 (S.D.N.Y. July 17, 2012)… ..........................................14

*Morris v. Affinity Health Plan, Inc.*,
No. 859 F. Supp.2d 611, 615-16 (S.D.N.Y. 2012)…........................................................13, 19

*Newman v. Stein*,
464 F.2d 689 (2d Cir. 1972) ................................................................................................15

*Noble v. 93 Univ. Place Corp.*,
224 F.R.D. 330 (S.D.N.Y. 2004) ..........................................................................................20

*Ortiz v. Fibreboard Corp.*,
527 U.S. 815 (1999) .............................................................................................................21

*In re Penthouse Executive Club Compensation Litig.*,
No. 10 Civ. 1145 (KMW), 2013 WL 1828598 (S.D.N.Y. April 30, 2013).. ........................16

*Port Auth. Police Benev. Ass'n, Inc. v. Port Auth. of N.Y. & N.J.*,
698 F.2d 150 (2d Cir. 1983) ................................................................................................18

*Ramos v. SimplexGrinnell LP*,
No. 07-981, 2011 U.S. Dist. Lexis 65593 at * 14-17 (E.D.N.Y. June 21, 2011)… ...............13

*Reade-Alvarez v. Eltman, Eltman & Cooper, P.C.*,
237 F.R.D. 26 (E.D.N.Y. 2006)............................................................................................17

*Reyes v. Altamarea Grp., LLC*,
No. 10 Civ. 6451, 2011 WL 4599822, at (S.D.N.Y. Aug. 16, 2011)… ................................23

*Robidoux v. Celani*,
987 F.2d 931 (2d Cir. 1993) ..........................................................................................18, 19

*Rossini v. Ogilvy & Mather, Inc.*,
798 F.2d 590 (2d Cir. 1986) ................................................................................................21

*Spicer*,
269 F.R.D.at 337-338… .......................................................................................................20

*In re Top Tankers, Inc. Sec. Litig.*,
No. 06 Civ. 13761, 2008 WL 2944620 (S.D.N.Y. July 31, 2008)..........................................11

*Torres v. Gristede's Corp.*,
No. 04 Civ. 3316, 2006 WL 2819730 (S.D.N.Y. September 29, 2006) .................................21

*Toure v. Cent. Parking Sys.*,
No. 05 Civ. 5237, 2007 WL 2872455 (S.D.N.Y. Sept. 28, 2007)..........................................20

*In re Traffic Executive Ass'n.,*
    627 F.2d 631 (2d Cir. 1980) ............................................................................................10

*In re Visa Check/ Master Money Antitrust Litig.,*
    280 F.3d 124, 139 (2d Cir. 2001)… .................................................................................21

*Wal-mart Stores, Inc. v. Dukes,*
    131 S. Ct. 2541 (2011)…...............................................................................................14

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.,*
    396 F.3d 96 (2d Cir. 2005) ............................................................................................10

*Zivali v. AT&T Mobility, LLC,*
    784 F. Supp.2d 456 (S.D.N.Y. 2011)…… ....................................................................14

**STATUTES**

29 U.S.C. §§ 201 .................................................................................................................1

29 U.S.C. § 216 ...................................................................................................................1

New York Labor Law Section 193 ...............................................................................passim

**OTHER AUTHORITIES**

Federal Rule of Civil Procedure 23 .............................................................................passim

Federal Rule of Civil Procedure 54… ................................................................................7

Herbert B. Newberg & Alba Conte, *Newberg on Class Actions* ("*Newberg*"), §§ 11.22
    (4th ed. 2002)................................................................................................................passim

## PRELIMINARY STATEMENT

Plaintiffs Nadia Oleniak, Ali Evans, and Kim Porter ("Plaintiffs"), on behalf of themselves and the class of current and former Customer Service Representatives employed by Defendants Time Warner Cable Inc., Time Warner Entertainment Company LP, Time Warner Cable LLC and Time Warner NY Cable LLC (the "Company" or "Defendants") in their New York City Market Call Centers during the class period, have settled Plaintiffs' class claims against Defendants for $3.75 million and now move without opposition for an order provisionally approving their proposed settlement.  The proposed settlement resolves all claims alleging that Defendants violated the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq.* (the "FLSA"), and the New York Labor Law ("NYLL") by failing to pay regular and/or overtime wages for "off the clock" work performed by Plaintiffs and the members of the putative class.  This settlement satisfies all of the criteria for preliminary approval.

Plaintiffs request that this Court conditionally certify, for settlement purposes only, a class pursuant to both Rule 23 as to claims under New York state law and a collective action as to Plaintiffs' federal claims under the FLSA, 29 U.S.C. 216(b).  Plaintiffs respectfully request that the Court: (1) grant preliminary approval of the Settlement Agreement and Release between Plaintiffs and Defendants attached as Exhibit A to the Declaration of Christopher Q. Davis in Support of Plaintiffs' Motion for Preliminary Approval of Class Settlement, Provisional Certification of the Settlement Class, Appointment of Plaintiffs' Counsel as Class Counsel, Approval of Plaintiffs' Proposed Notice of Settlement ("Motion for Preliminary Approval")[1]; (2) provisionally certify the proposed settlement class under Federal Rule of Civil Procedure 23(b)(3) and Section  29 U.S.C. § 216(b) for settlement purposes only; (3) appoint Christopher Q. Davis as Class Counsel ("Class Counsel"); and (4) approve the Notices of Proposed Settlement of Class Action and Collective Action Lawsuit and Fairness Hearing ("Proposed Notices"), attached as Exhibit 1 to the Notice of Motion for Preliminary Approval.

---

[1]      Unless otherwise indicated, all exhibits are attached to the Declaration of Christopher Q. Davis in Support of Plaintiffs' Motion for Preliminary Approval ("Davis Decl.").

1

## FACTUAL AND PROCEDURAL BACKGROUND

### I.    Procedural History

Plaintiffs initiated this action against Defendants on May 18, 2012 pursuant to Federal Rule of Civil

Procedure 23 and 29 U.S.C. § 216(b) in the United States District Court for the Southern District of New

York on behalf of themselves and others who are similarly situated (the "Complaint"). *See* Davis Decl. ¶ 3.

Plaintiffs, who worked as Customer Service Representatives in Defendants' Flushing, Queens Call Center,

allege that they and similarly situated employees in across the country were not paid proper overtime

compensation. *Id.* ¶ 5. An Amended Complaint was filed May 22, 2012. *Id.* ¶ 4. On June 13, 2012,

Defendants timely answered Plaintiffs' Complaint, denying Plaintiffs' allegations. *Id.* ¶ 4.

### II.   Overview of Investigation and Discovery

Plaintiffs' counsel conducted a thorough investigation into the merits of the potential claims and

defenses. *Id.* ¶ 9. Plaintiffs' counsel focused their investigation and legal research on the underlying merits

of class members' claims, the damages to which they were entitled, and the propriety of class certification.

*Id.* ¶ 9. Plaintiffs' counsel interviewed Plaintiffs and more than 20 other Customer Service Representatives

to determine the hours that they worked, the wages they were paid, the nature of their daily activities, and

other information relevant to their claims. *Id.* ¶ 10. Plaintiffs' counsel conducted two witness interviews in

the field and located a witness – Lead Plaintiff Nadia Oleniak's supervisor – who signed an affidavit and

provided key testimony which proved useful in mediation. *Id.* ¶ 11. In total, 13 additional Opt In Plaintiffs

filed consents during the litigation for a total of 17 Named and Opt In Plaintiffs. *Id.* ¶ 7.

Plaintiffs' counsel also obtained and reviewed thousands of pages of documents from Plaintiffs and

other opt ins, as well as thousands of documents produced by Defendants during discovery, including

employment handbooks, job descriptions, organizational charts, time sheets, training materials, telephone

call reports, individual pay stubs, pay slips and hiring materials. *Id.* ¶ 12. Plaintiffs' counsel assisted with

the preparation of the complaints, the factual investigations of claims, the drafting of and responses to written

discovery requests, the drafting and executing of declarations and multiple witness affidavits, and in

2

preparing for settlement negotiations and mediation. *Id.* ¶ 13. Plaintiffs' counsel also conducted extensive legal research on matters such as class certification standards and risk, factually similar class certification cases, summary judgment risk, risk attendant to "off the clock" overtime litigation, the appropriate scope of representative discovery sampling for class discovery, Defendants' anticipated *de minimis* defense, and Plaintiffs' damages. *Id.* ¶ 14.

Prior to the commencement of discovery, Plaintiffs' counsel retained a third-party document hosting service to organize and maintain its litigation-related document database. Plaintiffs' counsel also retained a forensic actuary as an expert for the purposes of calculating classwide overtime damages. *Id.* ¶ 15. Plaintiffs' counsel hired additional legal staff solely for the purpose of assisting with the litigation. *Id.* ¶ 15.

Plaintiffs' counsel conducted corporate depositions of two witnesses (Imani Breaker, the Head of Customer Care for the New York City Market and Regional President for the New York Region Jeffery Hirsch, and prepared for and defended the depositions of lead plaintiffs Nadia Oleniak, Ali Evans, and Kim Porter and Opt In Plaintiffs Ivy Bowen, Rudolfo Johns-Campbell, Dearise Wilson, Jesse Ruffin, Cherol Green, Christopher Gervais, and Joseph Sokolowski. *Id.* ¶ 16. A pre-trial conference was held on March 1, 2013.[2] *Id.* ¶ 22.

### III.   Settlement Negotiations

On or around March 2013, Plaintiffs and Defendants agreed to attempt to resolve this matter through non-binding private mediation, later advising the Court at the pretrial conference of their intention. *Id.* ¶ 23. Plaintiffs and Defendants agreed to narrow the scope of the proposed class for the purposes of mediation only, agreeing to mediate for those Customer Service Representatives employed in the New York City Market Call Centers (Flushing, Staten Island, Hudson Valley, and Bergen County, NJ) during the Class Period. *Id.* ¶ 25. Narrowing the scope of the class for mediation was consistent with Class Counsel's investigation which had revealed dissimilarities in policies relevant to class motion practice among TWC's different markets and regions. *Id.* ¶ 25.

---

[2]      Judge Katherine Polk Failla was assigned to the case on June 14, 2013.

On March 3, 2013, Judge Furman issued an Order staying discovery pending mediation. *Id.* ¶ 26. Plaintiffs' counsel prepared for mediation by researching and drafting a mediation statement, reviewing and selecting documentary evidence for presentation at mediation, coordinating the attendance of and preparing the class representatives for the mediation, providing Plaintiffs' expert with data for his classwide calculation of damages, and formulating a mediation demand. *Id.* ¶ 27. On April 19, 2013, Plaintiffs and Defendants attended a mediation session with JAMS neutral David Geronemus. *Id.* ¶ 28. As a result of the mediation, the parties reached an agreement as to the resolution of class claims for all Customer Service Representatives employed within 6 years of the filing of the Complaint for the NY Settlement Class (Flushing, Staten Island, and Hudson County Call Centers) and within three years for the NJ Settlement Class (Bergen County Call Center). *Id.* ¶ 29. At all times during the settlement negotiation process, negotiations were conducted on an arm's-length basis.

## SUMMARY OF THE SETTLEMENT TERMS

### I.  The Settlement Amount

The Maximum Settlement Amount is $3.75 million. *See* Settlement Agreement, attached to Davis Decl. as Ex. 1 ¶ 12 (hereinafter, "Ex. 1"). The Maximum Settlement Amount covers, among other things, all payments to Participating Class Members, incentive awards, Defendants' share of applicable payroll taxes and attorneys' fees and costs. *Id.* The Net Aggregate Settlement Amount is the Maximum Settlement Amount less the settlement administration fees, court-approved attorneys' fees and costs for Class Counsel, court-approved enhancement payments, and Defendants' share of applicable payroll taxes. *Id.* ¶ 12. Plaintiffs' counsel will seek from the Maximum Settlement Amount attorneys' fees of $1.25 million (which is one-third of the Maximum Settlement Amount) as well as reimbursement of their actual litigation costs and expenses. *Id.* ¶ 36 (e). Accordingly, to the extent presently calculable, the Net Aggregate Settlement Amount is approximately $2.5 million. Plaintiffs plan to engage RG2 Claims Administration LLC, by William W. Wickersham, Esq., Inc. ("RG2") to serve as Settlement Administrator. *Id.* ¶ 18. Defendants will pay a minimum of 80% of the Net Aggregate Settlement Amount to Participating Class Members

4

regardless of the number of Participating Class Members, with any remainder up to the 80% minimum threshold distributed to the Participating Class Members based on their proportionate compensable workweeks. *Id.* ¶ 36 (vii).   Any unclaimed amounts above the 80% minimum guarantee will be retained by Defendants. *Id.* ¶ 36 (vii).

## II.   Releases

The Settlement Agreement provides that all NY Class Members who do not timely opt out of the NY Class settlement will release all NYLL claims asserted against Defendants in the Second Amended Complaint. *Id.* ¶ 46.   NY Class Members will also release their FLSA claims and opt in to the FLSA settlement class by endorsing and cashing their settlement checks. *Id.* ¶ 36 (c). All NJ Class members who return completed claim and opt in forms within the time period provided in the Agreement will also release their FLSA claims.[3] *Id.* ¶ 51.

## III.   Eligible Employees

Class members who are entitled to receive payments from the Maximum Settlement Amount ("Class Members") include all Customer Service Representatives employed by Defendants in the New York City Market Call Centers during the Class Period.   The Settlement Agreement defines the Class Period for the NY Class as extending from May 18, 2006 through the date the Court grants Preliminary Approval of the Settlement. *Id.* ¶ 3.    With respect to the NJ Class, the Settlement Agreement defines the Class Period for the NJ Class as extending from May 18, 2009 through the date the Court grants Preliminary Approval of the Settlement. *Id.* ¶ 3.   A "Non-Participating Class Member" means a NY Class Member who timely submits a Request for Exclusion form, or any NJ Class Member who does not timely submit a Claim Form in accordance with Section IV of the Settlement Agreement. *Id.* ¶ 14.

## IV.   Allocation Formula

Participating Class Members will be paid pursuant to an allocation formula based on (i) the Net Aggregate Settlement Amount; (ii) divided by the total number of Compensable Workweeks worked by all

---

[3]        Plaintiffs have not alleged violations of New Jersey state law.

Class Members resulting in a dollars-per-Compensable-Workweek sum; (iii) multiplied by the number of

Compensable Workweeks worked by each Class Member during the Class Period to determine a distribution

to be made to that Class Member, or the "Compensable Workweek Benefit Amount." *Id.* ¶ 36 (h)(i).

Pursuant to the Settlement Agreement, the Settlement Administrator will calculate the sums payable to the

Class Members based on the allocation formula. *Id.* ¶ 37.

Each Participating Class Member's Compensable Workweek Benefit Amount will be attributed as

50% back wages and 50% interest. *Id.* ¶ 36 (h)(i).   From each Participating Class Member's Compensable

Workweek Benefit Amount, deductions for the Participating Class Member's share of federal, state and local

income tax withholding and all FICA tax on the wage portion of the Compensable Workweek Benefit

Amount will be made, resulting in the Participating Class Member's "Net Settlement Award." The Net

Settlement Award is the sum to be paid to each Participating Class Member. *Id.* ¶ 36 h (ii).   Defendants, or

the Settlement Administrator, will be responsible for issuing an IRS W-2 form to each Participating Class

Member for the wage portion of their Compensable Workweek Benefit Amount payable under this

Agreement and an IRS 1099 Form for the non-wage portion as may be necessary. *Id.* ¶ 36 (h)(ii).

## V.   Attorneys' Fees and Litigation Costs

Consistent with accepted practice for "common fund" settlement agreements, Plaintiffs' counsel will

apply for reimbursement from the Maximum Settlement Amount for their attorneys' fees in the sum of $1.25

million, or one-third (1/3) of the Maximum Settlement Amount sum of $3.75 million.[4] *Id.* ¶ 36 (e).

Plaintiffs' counsel will also seek reimbursement of their actual litigation costs and expenses to be paid from

the Maximum Settlement Amount. *Id.* ¶ 36 (e).   The Court need not rule on fees and costs now, however.

---

[4]      Attorneys' fees amounting to 33% of the available fund before claims are made are in the range commonly awarded for complex wage and hour litigations of this type. *See, e.g., deMunecas v. Bold Food, LLC,* No. 09 Civ. 440, 2010 WL 3322580, at *10 (S.D.N.Y. Aug. 23, 2010) (approving attorneys' fee award of 33% of $800,000 settlement of FLSA and NYLL collective and class claims after completion of informal discovery process and mediation); *Beckman v. KeyBank, N.A.,* 2013 WL 1803736 *10 (S.D.N.Y. April 29, 2013) ("Among FLSA cases, the most complex type is the "hybrid" action brought here, where state wage and hour violations are brought as an "opt out" class action pursuant to Rule 23 in the same action as the FLSA "opt in" collective action pursuant to 29 U.S.C. § 216(b).").

Pursuant to Federal Rules of Civil Procedure 23(h) and 54(d)(2), Plaintiffs' counsel will file a Motion for Approval of Attorneys' Fees, Service Awards, and Reimbursement of Expenses along with its Motion for Final Approval of the Settlement.

## VI.    Service Awards

In addition to their individualized awards under the allocation formula, Plaintiffs who provided the most assistance to the class and have been recognized as Class Representatives (Plaintiffs Nadia Oleniak, Ali Evans and Kim Porter, and Opt-in Plaintiffs Christopher Gervais, Dearise Wilson and Joseph Sokolowski) will apply for an enhancement payment ("Service Award") in recognition of the services rendered on behalf of the class. Ex. 1. ¶ 36 (f).    Plaintiffs have served the class by assisting with the preparation of the complaints, the factual investigations of claims, and the drafting and executing of declarations, attending mediation, sitting for deposition questioning, as well as by shouldering the risks incurred as a named plaintiff. Davis Decl. ¶¶ 7, 8, 10-24, 31.    Plaintiff Nadia Oleniak initiated the lawsuit and successfully furthered the interests of the class by gaining the cooperation of other class members including all 14 of the Opt Ins. *Id.* Further, Plaintiffs Nadia Oleniak and Ali Evans and Opt-in Plaintiffs, Christopher Gervais and Joseph Sokolowski attended the depositions of Defendants' corporate witnesses and provided assistance to Class Counsel during the deposition. *Id.* Plaintiff Dearise Wilson, the longest employed among the Class Representatives and the Opt In Plaintiffs, provided crucial information on TWC's policies regarding the authorization and payment of overtime, and also disclosed to counsel a series of emails corroborating class claims and which were particularly useful in mediation. *Id.* Also, Christopher Gervais, who resides and attends college in Delaware, made numerous trips to New York City solely for the sake of the litigation and at personal expense. *Id.*

The parties have agreed to set aside a fund of $70,000.00 for the Service Awards to be distributed as identified in the Stipulation of Settlement. Ex. 1 ¶ 36 (f). Service Awards of this type are commonly awarded in complex wage and hour litigation. *See Damassia v. Duane Reade, Inc.*, No. 04 Civ. 8819, No. 06 Civ. 2295, 2009 WL 5841128, at *4 (S.D.N.Y. July 27, 2009).

## VII.   Settlement Administrator

The Parties anticipate that RG/2 will be retained as Settlement Administrator. Ex. 1 ¶ 18.  The Settlement Administrator will be responsible for, among other things, the mailing of Notices to Class Members in accordance with this Court's Order, receipt of the funds comprising the Settlement Fund from which the Participating Class Member's Compensable Workweek Benefit Amount shall be drawn, calculating the Settlement Checks, the claims administration process, and distribution of Settlement Checks to Class Members and Service Awards.  Ex. 1 ¶ 37.

## CLASS ACTION SETTLEMENT PROCEDURE

The class action settlement procedure includes three distinct steps: (1) Preliminary approval of the proposed settlement after submission to the Court of a written motion for preliminary approval; (2) Dissemination of mailed and/or published notice of settlement to all affected class members; and (3) A final settlement approval hearing at which class members may be heard regarding the settlement, and at which argument concerning the fairness, adequacy, and reasonableness of the settlement may be presented. *See* Fed. R. Civ. P. 23(e); *see also* Herbert B. Newberg & Alba Conte, *Newberg on Class Actions* ("*Newberg*"), §§ 11.22, *et seq.* (4th ed. 2002).  This process safeguards class members' procedural due process rights and enables the Court to fulfill its role as the guardian of class interests.  With this motion, Plaintiffs request that the Court take the first step -- granting preliminary approval of the Settlement Agreement, provisional certification of the settlement classes, and approval of Plaintiffs' Proposed Notices for the NY and NJ Classes with authorization for Plaintiffs to send them.

The Parties respectfully submit the following proposed schedule for final resolution of this matter for the Court's consideration and approval:

1.  Within ten (10) days following the Court's entry of the Preliminary Approval Order, Defendants' Counsel and Class Counsel shall cooperate to provide the Settlement Administrator with a list of all Class Members, including last known addresses, dates of employment, and telephone numbers, under protection of a confidentiality agreement. Ex. 1 ¶ 39;

2.  RG2 mails the NJ and NY Notices to NJ and NY Class Members within seven (7) days following receipt of the information in 1. Ex. 1 ¶ 40;

3. NY and NJ Class Members shall have sixty (60) days after the date the NJ and NY Notices are mailed to opt out of (NY), opt into (NJ), and/or object to the settlements. Ex. 1 ¶ 40;

4. The NJ Claim Form must be completed in full, signed, postmarked and sent to the Settlement Administrator within sixty (60) days from its initial mailing by the Settlement Administrator.  Ex. 1 ¶ 45;

5. Within seven (7) days after the deadline to submit the Claim Forms, the Settlement Administrator will certify the names of all Class Members who submitted timely claims with the Settlement Administrator, the names of each NY Class Member who timely requested to be excluded from the Settlement, and the names of each Class Member who failed to timely submit either a claim or Request for Exclusion. Ex. 1 ¶ 47;

6. Class Members who wish to object to the Settlement must file with the Court and serve on counsel for the Parties, not later than forty-five (45) days after the date that the Settlement Administrator first mails the Class Notice, a written statement objecting to the Settlement and setting forth the grounds for the objection. Ex. 1 ¶ 46;

7. Class Counsel and Defendants' Counsel shall thereafter be entitled to file and serve a response to any such objection[s] no later than five (5) days before the hearing for final approval of the Settlement.  If the Court rejects a Class Member's objection, the Class Member will still be bound by the terms of this Agreement. Ex. 1 ¶ 48;

8. A final fairness hearing will be held as soon thereafter as is convenient for the Court. Ex. 1 ¶ 55 (f);

9. Prior to the final fairness hearing, Plaintiffs will submit a Motion for Judgment and Final Approval of the Settlements, together with a motion seeking the payment of attorneys' fees, costs, and the Service Award. Ex. 1 ¶ 56;

10. If the Court grants Plaintiffs' Motion for Final Approval of the Settlements, the Court will issue a Final Order and Judgment for Dismissal.

11. The Final Approval date of the Settlements shall be 31 days after the Court has entered Judgment, if no one has sought rehearing, reconsideration, or appellate review; or, if rehearing, reconsideration or appellate review is sought, the day after any and all avenues of rehearing, reconsideration and appellate review have been exhausted and no further rehearing, reconsideration or appellate review is permitted, and the time for seeking such review has expired and the Judgment has not been subject to fundamental change (as that term is defined in Paragraph 58 of the Stipulation of Settlement) as a result of rehearing, reconsideration or appellate review. Ex. 1 ¶ 58.

## ARGUMENT

### I.    Preliminary Approval of the Settlements Is Appropriate

The law favors compromise and settlement of class action suits. *Wal-Mart Stores, Inc. v. Visa U.S.A.*

*Inc.*, 396 F.3d 96, 116 (2d Cir. 2005) (noting the "strong judicial policy in favor of settlements, particularly

in the class action context") (internal quotations omitted).  The approval of a proposed class action settlement

is a matter of discretion for the trial court.  *See Maywalt v. Parker & Parsley Petroleum Co.*, 67 F.3d 1072,

1079 (2d Cir. 1998).  In exercising this discretion, courts should give "proper deference to the private

consensual decision of the parties."  *Clark v. Ecolab, Inc.*, Nos. 07 Civ. 8623, et al., 2009 WL 6615729, at *3

(S.D.N.Y. Nov. 27, 2009) (citation omitted).  "In evaluating the settlement, the Court should keep in mind

the unique ability of class and defense counsel to assess the potential risks and rewards of litigation . . . ."

*Clark*, 2009 WL 6615729, at *3 (internal quotations and citation omitted).

Preliminary approval, which is what Plaintiffs seek here, requires only an "initial evaluation" of the

fairness of the proposed settlement on the basis of written submissions and an informal presentation by the

settling parties.  *Clark*, 2009 WL 6615729, at *3 (citing *Newberg* § 11.25).  To grant preliminary approval,

the court need only find that there is "'probable cause' to submit the [settlement] to class members and hold

a full-scale hearing as to its fairness."  *In re Traffic Executive Ass'n*, 627 F.2d 631, 634 (2d Cir. 1980).

"Fairness is determined upon review of both the terms of the settlement agreement and the negotiating

process that led to such agreement."  *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 184 (W.D.N.Y. 2005).

"A presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-

length negotiations between experienced, capable counsel after meaningful discovery."  *Wal-Mart Stores*,

396 F.3d at 116 (internal quotations omitted); *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1354

(11th Cir. 1982) (recognizing that courts rely on the adversary nature of a litigated FLSA case resulting in

settlement as indicia of fairness).  If the settlement was achieved through experienced counsels' arm's-length

negotiations, "[a]bsent fraud or collusion, [courts] should be hesitant to substitute [their] judgment for that of

the parties who negotiated the settlement." *In re EVCI Career Colls. Holding Corp. Sec. Litig.*, No. 05 Civ. 10240, 2007 WL 2230177, at *4 (S.D.N.Y. July 27, 2007); *see also In re Top Tankers, Inc. Sec. Litig.*, No. 06 Civ. 13761, 2008 WL 2944620, at *3 (S.D.N.Y. July 31, 2008) (same).

A.      **The Settlements Are Fair, Reasonable, and Adequate**.

In evaluating a class action settlement, courts in the Second Circuit generally consider the nine factors set forth in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974). The *Grinnell* factors are (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation. *Grinnell*, 495 F.2d at 463. All of the *Grinnell* factors weigh in favor of approval of the Settlement Agreement.

1.      **Litigation Through Trial Would be Complex, Costly, and Long (*Grinnell* Factor 1)**

By reaching a favorable settlement prior to dispositive motions or trial, Plaintiffs seek to avoid significant expense and delay, and instead ensure recovery for the class. "Most class actions are inherently complex and settlement avoids the costs, delays and multitude of other problems associated with them." *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 174 (S.D.N.Y. 2000), *aff'd sub. nom. D'Amato v. Deutsche Bank*, 236 F.3d 78 (2d Cir. 2001). This case is no exception, with approximately 2700 class members. *See* Ex. 1 ¶ 3.

Although the Parties have already expended time and expense in litigating this matter, further discovery and litigation without settlement would necessarily result in additional expense and delay. A complicated trial with many witnesses and complex legal, factual, evidentiary, and damages issues would

involve extensive investments of time by all parties, including judicial resources to adjudicate the Parties' disputes. Any judgment would likely be appealed. This settlement, on the other hand, makes monetary relief available to class members in a prompt and efficient manner. Therefore, the first *Grinnell* factor weighs in favor of preliminary approval.

### 2. The Reaction of the Class Has Been Positive (*Grinnell* Factor 2)

Notice of the settlements and their details has not yet issued to the class. The Court should analyze this factor after notice issues and class members are given the opportunity to opt-out, opt-in, or object, so this factor weighs in favor of preliminary approval at this initial stage.

### 3. Discovery Has Advanced Far Enough to Allow the Parties to Resolve the Case Responsibly (*Grinnell* Factor 3)

Although preparing this case through trial would require thousands more hours of discovery work for both sides, the Parties have completed enough discovery to recommend settlement. The proper question is "whether counsel had an adequate appreciation of the merits of the case before negotiating." *Warfarin*, 391 F.3d at 537. "The pretrial negotiations and discovery must be sufficiently adversarial that they are not designed to justify a settlement . . . [but] an aggressive effort to ferret out facts helpful to the prosecution of the suit." *In re Austrian*, 80 F. Supp. 2d at 176 (internal quotations omitted).

The Parties' discovery here meets this standard. Plaintiffs' counsel interviewed Plaintiffs and more than ten (20) other opt-ins or witnesses, and obtained and reviewed thousands of pages of documents from Defendants. Davis Decl. ¶12. Plaintiffs' counsel conducted two depositions and defended 10 depositions. Defendants provided Plaintiffs with extensive payroll records and Kronos biometric time clock data. This information allowed Plaintiffs to extrapolate and perform damages calculations. *Id.* at ¶ 15. Therefore, this factor favors preliminary approval.

### 4. Plaintiffs Would Face Real Risks if the Case Proceeded (*Grinnell* Factors 4 and 5)

Although Plaintiffs believe their case is strong, it is subject to considerable risk as to liability and damages. In weighing the risks of establishing liability and damages, the court "must only weigh the

likelihood of success by the plaintiff class against the relief offered by the settlement." *In re Austrian*, 80 F.

Supp. 2d at 177 (internal quotations omitted). A trial on the merits would involve significant risks to

Plaintiffs because of the fact-intensive nature of proving liability under the FLSA and the NYLL, and in light

of the defenses available to Defendant, which would pose substantial risk as to both liability and damages.

      To prove both liability and damages, Plaintiffs would have to put forth evidence that they and other

Class Members worked in excess of the hours recorded by Defendant and for which they were not paid.

Further, Plaintiffs would need to prove that their pre-shift activities were compensable. Notably,

Defendants' legal team previously prevailed on such an argument winning summary judgment on behalf of

TWC in a lawsuit which involved similar but not identical allegations. *See Gillings v. Time Warner Cable

LLC*, No. CV 10-5565-AG(RNBx), 2012 WL 1656937, at * 4 (C.D. Cal., Mar. 26, 2012) (granting summary

judgment and finding that time spent by Plaintiffs loading their computer before they could clock in to

Kronos was less than 10 minutes and thus *de minimus*). While Plaintiffs believe that they could ultimately

establish Defendants' liability on these claims given the substantial factual differences between the *Gillings*

Plaintiffs' case and theirs, Plaintiffs wish to settle and remove the uncertainties inherent in any trial or

appeal. *See Morris v. Affinity Health Plan, Inc.*, 859 F.Supp.2d 611, 615–16 (S.D.N.Y.2012) (commonality

satisfied where, among other allegations, plaintiffs claimed that defendant had policy of not paying all class

members overtime pay); *Ramos v. SimplexGrinnell LP*, No. 07-981, 2011 U.S. Dist. Lexis 65593 at *14-17

(E.D.N.Y. June 21, 2011) (citing certified wage and hour cases and distinguishing Dukes on the grounds that,

among others, plaintiffs had "come forward with class-wide proof culled from defendant's electronic

data…"). This factor therefore weighs in favor of preliminary approval.

     **5.**    **Establishing a Class and Maintaining it Through Trial Would Not Be Simple
(*Grinnell* Factor 6)**

      The risk of obtaining class certification and maintaining it through trial is also present. The Court

has not certified a class (whether based on the NYLL or FLSA claims) yet, and the Parties anticipate that

such a determination would be reached only after further discovery and intense, exhaustive briefing by both Parties.

Notably, Plaintiffs and the putative class face substantial risk in pursuing final certification of both their NYLL class action and their FLSA collective action, particularly in light of the Supreme Court's recent decisions in *Wal–Mart Stores, Inc. v. Dukes*, —— U.S. ——, 131 S.Ct. 2541 (2011) and *Comcast v. Behrend*, 2013 WL 1222646 (March 27, 2013).  Class Counsel faced unique risks on the Rule 23 requirements of commonality and predominance given evidence of a lack of uniformity of practices between regions, markets, call centers and even among different supervisors with respect to the particular unlawful "off the clock" practice alleged.   Notably, testimony of Defendants' witnesses revealed that relevant policies and handbooks differed by market.  *See* Davis Decl. ¶ 25.

Further, Plaintiffs' wage claims are based on allegations of a common unlawful policy of requiring Plaintiffs and the class to work "off the clock" and without compensation.  However, notwithstanding Plaintiffs' position, "off the clock" wage and hour cases are frequently susceptible to differing proof on other matters such as individual damages and whether work performed off the clock is compensable.  Given the possibility of individualized inquiry, a risk that is heightened in "off the clock" cases, courts in this District have increasingly decertified FLSA collectives involving such allegations.  *See, e.g., Morano v. Intercontinental Capital Grp., Inc.,No.* 10 Civ. 2192, 2012 WL 2952893 (S.D.N.Y. July 17, 2012) (decertification of an FLSA collective in off the clock case brought by loan officers); *Zivali v. AT & T Mobility, LLC*, 784 F.Supp.2d 456 (S.D.N.Y.2011) (decertification of collective action in off the clock case).

In opposing class certification, Defendants would likely argue that these and a variety of other individualized questions exist, that a class action is not a superior method to resolve Plaintiffs' claims, and that a class trial would not be manageable.  Risk, expense, and delay permeate such processes.  Settlement eliminates this risk, expense, and delay.  This factor favors preliminary approval.

### 6.   Defendants' Ability to Withstand a Greater Judgment is Not Clear (*Grinnell* Factor 7)

The $3.75 million maximum settlement is also fair, reasonable, and adequate. *See, e.g., Frank,* 228 F.R.D. at 186 (a defendant's ability to withstand a greater judgment weighs against preliminary approval). Even if protracted litigation were to yield a judgment larger than the settlement amount, a "defendants' ability to withstand a greater judgment, standing alone, does not suggest that the settlement is unfair." *See In re Austrian and German Bank Holocaust Litigation,* 80 F.Supp.2d 164, 178 and fn. 9 (S.D.N.Y. 2000). Since there is no basis for believing Defendants would be unable to withstand a greater judgment, this is a neutral factor.

      7.      **The Settlement Funds are Substantial, Even in Light of the Best Possible Recovery and the Attendant Risks of Litigation (*Grinnell* Factors 8 and 9)**

Plaintiffs' counsel has determined that this case presents significant risks that militate toward compromise. Defendants agreed to settle this case for a substantial amount, $3.75 million, which, according to the calculations of Plaintiffs' expert, represents approximately 75% of Plaintiffs' wage underpayment recovery. Ex. 1 ¶ 12. This settlement amount represents a good value given the attendant risks of litigation, and, since the recovery makes Plaintiffs whole, the recovery might not be greater if Plaintiffs succeeded on all claims at trial and survived an appeal.

The determination of whether a settlement amount is reasonable "does not involve the use of a 'mathematical equation yielding a particularized sum.'" *Frank,* 228 F.R.D. at 186 (quoting *In re Austrian,* 80 F. Supp. 2d at 178). "Instead, 'there is a range of reasonableness with respect to a settlement – a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion.'" *Id.* (quoting *Newman v. Stein,* 464 F.2d 689, 693 (2d Cir. 1972)).

Here, each Class Member will receive a payment based upon the number of compensable workweeks he or she worked.   A uniform weekly underpayment of overtime wages was assumed based on Class Counsel's factual inquiry. *Id.* ¶ 36 h (i). Notably, despite significant decertification risk, Class Counsel and the Class Representatives obtained results on behalf of the class, including negotiating for a gross settlement

amount accounting for 75% of the estimated overtime wage underpayment. *Id.* ¶ 12.  Weighing the benefits

of the settlements against the risks associated with proceeding in the litigation, the settlement amount is

reasonable.

Accordingly, the *Grinnell* factors all weigh in favor of issuing preliminary approval of the Settlement

Agreement.  The Settlement Agreement is the result of extensive, arms'-length negotiations by counsel well-

versed in the prosecution of wage and hour class and collective actions.  Importantly, a settlement like this

one, reached with the help of a third-party neutral, enjoys a "presumption that the settlement achieved meets

the requirements of due process." *See Johnson v. Brennan*, 10 Civ. 4712 CM, 2011 WL 4357376, at *8

(S.D.N.Y. Sept. 16, 2011); (citations omitted); *see also In re Penthouse Executive Club Compensation

Litigation*, No. 10 Civ. 1145 at *2 (KMW), 2013 WL 1828598 (S.D.N.Y. April 30, 2013) (granting

preliminary approval in part based on participation of neutral David Geronemus of JAMS).  Because the

settlement, on its face, are "'fair, adequate, and reasonable, and not a product of collusion,'" *Frank*, 228

F.R.D. at 184 (quoting *Joel A. v. Giuliani*, 218 F.3d 132, 138-39 (2d Cir. 2000)), the Court should grant their

preliminary approval.

## II.    Conditional Certification of the Rule 23 Class Is Appropriate.

For settlement purposes, Plaintiffs seek to certify a class under Federal Rule of Civil Procedure 23(e).

Specifically, Plaintiffs respectfully request that the Court conditionally certify the following settlement class

under Federal Rule of Civil Procedure 23(a) and (b)(3) (the "Class") for purposes of effectuating the

settlements:

> All individuals who are or were employed as Customer Service Representatives by
> Defendants in Defendants' customer service call centers located in Flushing, Staten
> Island and Hudson Valley, New York at any time between May 18, 2006 and the date
> the Court grants Preliminary Approval of the Settlement.

Ex. 1 ¶ 3.

The Court should make a determination that the proposed class satisfies Rule 23(a)'s requirements of

numerosity, commonality, typicality and adequacy of representation, and at least one of the subsections of

Rule 23(b), *see Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997); *Hanlon*, 150 F.3d at 1019.  As discussed below, all of the certification requirements for settlement purposes are met for the proposed Rule 23 settlement class, and Defendants consent to provisional certification for settlement purposes only.  *County of Suffolk v. Long Island Lighting Co.*, 710 F. Supp. 1422, 1424 (E.D.N.Y. 1989) ("It is appropriate for the parties to a class action suit to negotiate a proposed settlement of the action prior to certification of the class."), *aff'd in part, rev'd in part on other grounds*, 907 F.2d 1295 (2d Cir. 1990).  Provisional settlement class certification and appointment of class counsel have several practical purposes, including avoiding the costs of litigating class status while facilitating a global settlement, ensuring notification of all Class Members of the terms of the proposed Settlement Agreements, and setting the date and time of the final approval hearing.  *See, e.g., In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d at 790-92 (conditionally certifying multi-state classes and granting preliminary approval to nationwide wage and hour settlement); *Lindsay v. Government Employees Ins. Co.*, 251 F.R.D. 51, 57 (D.D.C. 2008) ("Many courts have concluded that 'permitting New York Labor Law claims to proceed as Rule 23(b)(3) class actions, along with FLSA collective actions, is a superior method' for adjudicating plaintiffs' claims–at least where, as here, plaintiffs' state law claims are based on the same facts as their federal law claims") (citations omitted).

Under Rule 23(a), a class action may be maintained if all of the prongs of Rule 23(a) are met, as well as one of the prongs of Rule 23(b).  Rule 23(a) requires that (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.  Fed. R. Civ. P. 23(a).  In the Second Circuit, "Rule 23 is given liberal rather than restrictive construction, and courts are to adopt a standard of flexibility" in evaluating class certification.  *Reade-Alvarez v. Eltman, Eltman & Cooper, P.C.*, 237 F.R.D. 26, 31 (E.D.N.Y. 2006) (quoting *Marisol A. v. Giuliani*, 126 F.3d 372, 377 (2d Cir. 1997)).

Nonetheless, Plaintiffs must meet each element of class certification. *In re IPO Sec. Litig. ("Miles I")*, 471 F.3d 24, 41-42 (2d Cir.2006)).

### A.   Numerosity

Plaintiffs easily satisfy the numerosity requirement because there are approximately 2700 Class Members in the NY class. *Id.* at ¶ 3. The numerosity requirement is satisfied when the class is "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1); *see also Hanlon*, 150 F.3d at 1019. "Impracticable does not mean impossible." *Robidoux v. Celani*, 987 F.2d 931, 935 (2d Cir. 1993). "[N]umerosity is presumed at a level of 40 members." *Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995).

### B.   Commonality

The proposed settlement class also satisfies the commonality requirement, the purpose of which is to test "whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Gen. Tel. Co. of Southwest v. Falcon*, 457 U.S. 147, 157 n.13 (1982). Although the claims need not be identical, they must share common questions of fact or law. *Port Auth. Police Benev. Ass'n, Inc. v. Port Auth. of N.Y. & N.J.*, 698 F.2d 150, 153-54 (2d Cir. 1983). Courts construe the commonality requirement liberally. *Frank*, 228 F.R.D. at 181 (citation omitted).

This case involves numerous common issues. Plaintiffs and Class Members all bring the identical claims that Defendants failed to pay them earned wages in violation of state and federal wage and hour laws. Other common issues include, but are not limited to, (a) whether Defendants maintained and furnished to Plaintiffs and Class Members accurate time and wage records; and (b) whether Defendants acted willfully or in reckless disregard of the statute. These common questions are similar to those in another case in which another court in this District recently granted class certification for settlement purposes. *See Clark v. Ecolab Inc.*, Nos. 07 Civ. 8623, *et al.*, 2010 WL 1948198, at *3 (S.D.N.Y. May 11, 2010) (shared issues that help to satisfy Rule 23 commonality requirement include "whether [Defendant] failed to pay Plaintiffs and the state settlement Class Members overtime premium pay for all hours they worked over 40 in a workweek;

and…whether [Defendant] maintained accurate time records of the hours Plaintiffs and the state settlement Class Members worked"). In the absence of class certification and settlement, individual Class Members would be forced to litigate each common issue of fact.

### C.   Typicality

Rule 23 requires that the claims of the representative party be typical of the claims of the class. "Like the commonality requirement, typicality does not require the representative party's claims to be identical to those of all class members." *Frank*, 228 F.R.D. at 182. Typicality is satisfied "when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Marisol A.*, 126 F.3d at 376 (internal quotations omitted). "Minor variations in the fact patterns underlying individual claims" do not defeat typicality when the defendants direct "the same unlawful conduct" at the named plaintiff and the class. *Robidoux*, 987 F.2d at 936-37.

Plaintiffs shared the same job titles of the Class Members – Customer Service Representative – and the same job duties, and were subject to the same employment handbooks and policies governing their performance, workplace conduct and working overtime hours. Davis Decl. ¶ 18.   Plaintiffs claim the same common unlawful practice, namely, that Defendants requirement that Customer Service Representatives be "call ready" - powered on their computers with necessary software open and logged in to the telephone queue – at the start of their shift forcing them to perform necessary preparatory activities off the clock and without pay. Plaintiffs also claim the same injuries as do Class Members – that Defendants failed to properly pay them lawful wages based on a common "off the clock" practice of not paying for certain overtime hours worked while performing their compensable pre-shift preparatory. *Id.* ¶ 19.   Plaintiffs and the Class Members also commonly allege that Defendants failed to keep accurate records of time worked. *Id.* ¶ 21.

Because Plaintiffs' wage and hour claims arise from the same factual and legal circumstances that form the basis of Class Members' claims, Plaintiffs satisfy the typicality requirement. *See Morris*, 859 F.Supp.2d at 615–16 (commonality satisfied where, among other allegations, plaintiffs claimed that

defendant had a policy of not paying all class members overtime pay); *Clark*, 2010 WL 1948198, at *3

(common issues that help to satisfy Rule 23 commonality requirement include "whether [Defendant] failed to

pay Plaintiffs and the state settlement Class Members overtime premium pay for all hours they worked over

40 in a workweek; and ... whether [Defendant] maintained accurate time records of the hours Plaintiffs and

the state settlement Class Members worked"); *Diaz v. Eastern Locating Serv., Inc.,* No. 10 Civ. 4082, 2010

WL 2945556, at *2 (S.D.N.Y. July 22, 2010); *Frank*, 228 F.R.D. at 182 (finding that class members satisfied

the typicality requirement where "all class members . . . allege that Kodak failed to pay them . . . overtime

wages for hours worked in excess of forty per week during the relevant time period").

### D.   Adequacy of the Named Plaintiffs

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests

of the class." Fed. R. Civ. P. 23(a)(4). "The adequacy requirement exists to ensure that the named

representative will 'have an interest in vigorously pursuing the claims of the class, and . . . have no interests

antagonistic to the interests of other class members.'" *Toure v. Cent. Parking Sys.*, No. 05 Civ. 5237, 2007

WL 2872455, at *7 (S.D.N.Y. Sept. 28, 2007) (quoting *Denney v. Deutsche Bank AG,* 443 F.3d 253, 268 (2d

Cir. 2006)). "[O]nly a conflict that goes to the very subject matter of the litigation will defeat a party's claim

of representative status." *Dziennik v. Sealift, Inc.*, No. 05 Civ. 4659, 2007 WL 1580080, at *6 (E.D.N.Y.

May 29, 2007) (citation and (internal quotation marks omitted). Regarding the adequacy of the Named

Plaintiffs, there is no evidence or indicia that they have interests that are antagonistic or at odds with Class

Members. *See Diaz*, 2010 WL 2945556, at *2; *Clark*, 2009 WL 6615729, at *5 .

Plaintiffs' counsel also meets the adequacy requirement of Rule 23(a)(4) because their "experience,

knowledge of this area of law, work invested in identifying the potential claims in this action, and ability to

commit sufficient resources to representing the class also satisfy the Rule 23(g) requirements for

appointment as class counsel." *Spicer*, 269 F.R.D. at 337-338 (citing *Noble v. 93 University Place Corp.*, 224

F.R.D. 330, 346 (S.D.N.Y.2004)). Accordingly, reference to the Davis Declaration supports the conclusion

that counsel are qualified and the requirements of 23(a)(4) are met. Among other things, Plaintiffs' counsel

has previously been appointed as Class Counsel and as co-Class Counsel. *Id.* ¶ 1.

**E.     Certification is Proper Under Rule 23(b)(3)**

Rule 23(b)(3) requires that common questions of law or fact not only be present, but also that they "predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). This inquiry examines "whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at 623. That Plaintiffs easily meet the Rule 23(a) criteria is a strong indicator that Rule 23(b)(3) is satisfied. *Rossini v. Ogilvy & Mather, Inc.*, 798 F.2d 590, 598 (2d Cir. 1986) (satisfaction of Rule 23(a) "goes a long way toward satisfying the Rule 23(b)(3) requirement of commonality").

Certification under Rule 23(b)(3) will allow Class Members to opt out of the settlements and preserve their right to seek damages independently. This approach protects Class Members' due process rights, and is consistent with the Supreme Court's decision in *Ortiz v. Fibreboard Corp.*, which explains that due process requires an opportunity to opt out of significant monetary relief. *Ortiz*, 527 U.S. 815, 846-48 (1999).

**1.     Common Questions Predominate**

To establish predominance, Plaintiffs must demonstrate that "the issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole . . . predominate over those issues that are subject only to individualized proof." *Cordes & Co. Fin. Servs., Inc. v. A.G. Edwards & Sons, Inc.*, 502 F.3d 91, 108 (2d Cir. 2007). The essential inquiry is whether "liability can be determined on a class-wide basis, even when there are some individualized damage issues." *Marriott v. County of Montgomery*, 227 F.R.D. 159, 173 (N.D.N.Y. 2005) (quoting *In re Visa Check/MasterMoney Antitrust Litig*, 280 F.3d 124, 139 (2d Cir. 2001)).

Here, Class Members' common factual allegations and common legal theory – that Defendants violated federal and state wage and hour laws by failing to pay them for overtime hours predominate over

any factual or legal variations among class members. *See Torres v. Gristede's Corp.*, No. 04 Civ. 3316, 2006 WL 2819730 (S.D.N.Y. Sept. 29, 2006), at *16 (plaintiffs "introduced sufficient proof that Defendants engaged in a common practice to deny employees overtime pay," and "this issue predominates over any individual calculations of overtime wages").

### 2.   A Class Action is a Superior Mechanism

The second part of the Rule 23(b)(3) analysis is a relative comparison examining whether "the class action device [is] superior to other methods available for a fair and efficient adjudication of the controversy." *Green v. Wolf Corp.*, 406 F.2d 291, 301 (2d Cir. 1968); *Amchem*, 521 U.S. at 617. Rule 23(b)(3) sets forth a non-exclusive list of factors pertinent to judicial inquiry into the superiority of a class action, including: the class members' interests in individually controlling the prosecution or defense of separate actions; whether individual class members wish to bring, or have already brought, individual actions; and the desirability of concentrating the litigation of the claims in the particular forum. Fed. R. Civ. P. 23(b)(3).[5]

Here, Plaintiffs and the class members have limited financial resources with which to prosecute individual actions, and Plaintiffs are unaware of any pending individual lawsuits filed by class members arising from the same allegations. Regarding the forum, concentrating the litigation in this Court is desirable because much of the allegedly wrongful conduct occurred within the jurisdiction of this Court and will conserve judicial resources. *See Damassia v. Duane Reade*, 250 F.R.D. 152 at 161, 164 (SDNY 2008). A class action pursuant to Rule 23 is the most suitable mechanism to fairly, adequately, and efficiently resolve Plaintiffs' and Class Members' claims.

### III.   The Court Should Approve the FLSA Settlement

Plaintiffs respectfully request that the Court conditionally certify the following settlement class under the FLSA for purposes of effectuating the settlements:

---

[5]   Another factor, whether the case would be manageable as a class action at trial, is not of consequence in the context of a proposed settlement. *See Amchem*, 521 U.S. at 620 ("[c]onfronted with a request for settlement-only class certification, a [trial] court need not inquire whether the case, if tried, would present intractable management problems, for the proposal is that there be no trial").

> All individuals who are or were employed as Customer Service Representatives by Defendants in at any time between May 18, 2009 and the date the Court grants Preliminary Approval of the Settlement at one of the Defendants' following call center locations: Flushing, Staten Island, Hudson Valley, and Bergen County.

Ex. 1 ¶ 3.

Since under an FLSA settlement, "parties may elect to opt in but a failure to do so does not prevent them from bringing their own suits at a later date," FLSA collective actions do not implicate the same due process concerns as Rule 23 actions. *See McKenna v. Champion Intern. Corp.,* 747 F.2d 1211, 1213 (8th Cir.1984); *Reyes v. Altamarea Grp., LLC,* No. 10 Civ. 6451, 2011 WL 4599822, at *3 (S.D.N.Y. Aug. 16, 2011) Accordingly, the standard for approval of an FLSA settlement is lower than for a class action under Rule 23. Courts approve FLSA settlements when they are reached as a result of contested litigation to resolve bona fide disputes. *See Lynn's Food Stores, Inc.,* 679 F.2d at 1354 n. 8.; *see also Reyes,* 2011 WL 4599822, at *6. Typically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of the settlement. *Id.* at 1353–54. If the proposed FLSA settlement reflects a reasonable compromise over contested issues, it should be approved. *Id.* at 1354; *Reyes,* 2011 WL 4599822, at *6.

As mentioned above, the settlement was the product of adversarial litigation, extensive exchange of discovery, and arms'-length negotiations by counsel experienced in the prosecution of wage and hour class and collective actions. Accordingly, the Settlement Agreement resolves a clear and actual dispute under circumstances supporting a finding that is fair and reasonable.

## IV.    Plaintiffs' Counsel Should Be Appointed as Class Counsel

The lawyer representing the Plaintiffs, Christopher Q. Davis, should be appointed as Class Counsel. Rule 23(g), which governs the standards and framework for appointing class counsel for a certified class, sets forth four criteria the district court must consider in evaluating the adequacy of proposed counsel: (1) "the work counsel has done in identifying or investigating potential claims in the action;" (2) "counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;"

(3) "counsel's knowledge of the applicable law; and" (4) "the resources that counsel will commit to representing the class." Fed. R. Civ. P. 23(g)(1)(A).  The Advisory Committee has noted that "[n]o single factor should necessarily be determinative in a given case." Fed. R. Civ. P. 23(g) advisory committee's note.

The proposed Class Counsel meets all of these criteria.  As the Davis Declaration indicates, Class Counsel has done substantial work identifying, investigating, prosecuting, and settling Plaintiffs' and the Class Members' claims. Davis Decl. ¶ 9.  Additionally, Class Counsel has substantial experience prosecuting and settling employment class actions, including wage and hour class actions and is well-versed in wage and hour law and in class action law and are well-qualified to represent the interests of the class. *Id.* ¶ 48.  Accordingly, courts have repeatedly found Mr. Davis (through prior employer firms) to be adequate class counsel in wage and hour class actions. *Id.* ¶ 46.

## IV.   The Proposed Notices are Appropriate

### A.   The Proposed Notices Satisfy Due Process

The content of the Proposed Notices fully complies with due process and Federal Rule of Civil Procedure 23.  Pursuant to Rule 23(c)(2)(B), the notice must provide:

> the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort. The notice must clear and concisely state in plain, easily understood language: (i) the nature of the action; (ii)the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

Fed. R. Civ. P. 23(c)(2)(B).

The Proposed Notices here satisfy each of these requirements.  Additionally, they also describe the terms of the settlements, inform the class about the allocation of attorneys' fees, and provide specific information regarding the date, time, and place of the final approval hearing.  Accordingly, the detailed information in the Proposed Notices is more than adequate to put Class Members on notice of the proposed settlements and is well within the requirements of Rule 23(c)(2)(B).  Courts have approved class notices

even when they provided only general information about a settlement. *See, e.g., In re Michael Milken & Assocs. Sec. Litig.*, 150 F.R.D. 57, 60 (S.D.N.Y. 1993) (class notice "need only describe the terms of the settlement generally"). The Proposed Notices far exceed this bare minimum and fully comply with the requirements of Rule 23(c)(2)(B).

**B.      The Notice Plan and Award Distribution Process Are Appropriate**

The Settlement Agreements provide that Notice to Class Members will be mailed individually by RG2 to the last known address of each class member within seven (7) days of this Court's Order Granting Preliminary Approval. Ex. 1 ¶ 40. The Settlement Administrator will take all reasonable steps to obtain the correct address of any class member for whom a Notice is returned as undeliverable and re-send to the most recent addresses available. *Id.* at ¶ 40.

As discussed above, the Proposed Notices for the NJ and NY Classes contain information about how to exclude oneself, object to the settlement, and/or opt-in to the settlement. Class Members will have 60 days from the date of mailing to submit opt-out requests, comment on or object to the settlement, and/or opt-in to the settlement. *Id.* at ¶ 40.

**CONCLUSION**

For the reasons set forth above, Plaintiffs respectfully request that the Court grant this Motion for Preliminary Approval and enter the Proposed Order.

DATED:  July 24, 2013

Stoll, Glickman & Bellina LLP

Christopher Q. Davis (CD-7282)
Stoll, Glickman & Bellina, LLP
475 Atlantic Avenue, Third Floor
Brooklyn, NY 11217
*Attorneys for Plaintiff*