**MEMO ENDORSED**

Failla, K.

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED:   12/17/2013

NADIA OLENIAK, ALI EVANS, and KIM
PORTER, individually and on behalf of all others
similarly situated,

          Plaintiffs,

          vs.

TIME WARNER CABLE INC, TIME WARNER
ENTERTAINMENT COMPANY LP, TIME
WARNER CABLE LLC, and TIME WARNER NY
CABLE LLC D/B/A TIME WARNER CABLE
SHARED SERVICES,

          Defendants.

Civil Action No. 12-CV-3971 (KPF)

**ORDER GRANTING PLAINTIFFS' UNOPPOSED MOTION FOR**
**CERTIFICATION OF THE SETTLEMENT CLASS, FINAL APPROVAL OF CLASS**
**ACTION SETTLEMENT, APPROVAL OF THE FLSA SETTLEMENT, APPROVAL OF**
**ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES, AND APPROVAL OF**
**REPRESENTATIVE SERVICE AWARDS**

       Plaintiffs Nadia Oleniak, Kim Porter and Ali Evans ("Named Plaintiffs") initiated this

Action against Defendants on May 18, 2012 pursuant to Federal Rule of Civil Procedure 23

("FRCP"), the Fair Labor Standards Act of 1938, 29 U.S.C. §§ 201 *et seq.* ("FLSA") and the

New York Labor Law, Ch. 31 of the Consolidated Laws of New York ("NYLL").  Plaintiffs'

pleading alleged "hybrid collective and class action" claims on behalf of themselves and others

who are similarly situated (the "Plaintiffs").  *See* Davis Decl. ¶ 3.[1]  Plaintiffs, who worked as

Customer Service Representatives in Defendants' Flushing, Queens Call Center, allege that they

---

[1] "Davis Decl." refers to the Declaration of Christopher Q. Davis attached as Exhibit A to Plaintiffs'
Unopposed Motion for Certification of the Settlement Class, Final Approval of the Class Action Settlement,
Approval of the FLSA Settlement, and Service Awards.

and similarly situated employees in across the country were not paid proper overtime compensation.  *Id.* ¶ 5.   An Amended Complaint was filed May 22, 2012.  *Id.* ¶ 4.

The lawsuit sought, *inter alia*, certification of this Action as a "collective action" under the FLSA and as a "class action" under FRCP 23 and state law, and sought unpaid overtime wages, prejudgment interest, liquidated damages, and attorneys' fees and costs.  In response to the Lawsuit, On June 13, 2012, Defendants timely answered Plaintiffs' Amended Complaint, denying Plaintiffs' allegations.  *Id.* ¶ 4.

The Parties engaged in substantial discovery and active litigation of the lawsuit, including: (1.)  Plaintiffs' counsel conducted investigation and legal research on the underlying merits of class members' claims, the damages to which they were entitled, and the propriety of class certification.  *Id.* ¶ 9.  (2.)  Plaintiffs' counsel interviewed the Lead Plaintiffs (i.e. the Named Plaintiffs and the Opt In Plaintiffs) and more than 20 other Customer Service Representatives to determine the hours that they worked, the wages they were paid, the nature of their daily activities, and other information relevant to their claims.  *Id.* ¶ 10. (3.) Plaintiffs' counsel conducted two witness interviews in the field and located a witness – Named Plaintiff Nadia Oleniak's supervisor – who signed an affidavit and provided key testimony which proved useful in mediation.  *Id.* ¶ 11. (4.) Plaintiffs' counsel also obtained and reviewed thousands of pages of documents from Plaintiffs and other opt ins, as well as thousands of  documents produced by Defendants during discovery, including employment handbooks, job descriptions, organizational charts, time sheets, training materials, telephone call reports, individual pay stubs, pay slips and hiring materials.  *Id.* ¶ 12.  (5.)  Plaintiffs' counsel assisted with the preparation of the Complaints, the factual investigations of claims, the drafting of and responses to written discovery requests, the drafting and executing of declarations and multiple witness affidavits,

and in preparing for settlement negotiations and mediation.  *Id.* ¶ 13.  (6.) Plaintiffs' counsel also conducted extensive legal research on matters such as class certification standards and risk, factually similar class certification cases, summary judgment risk, risk attendant to "off the clock" overtime litigation, the appropriate scope of representative discovery sampling for class discovery, Defendants' anticipated *de minimis* defense, and Plaintiffs' damages.  *Id.* ¶ 14.  (7.) Plaintiffs' counsel retained a third-party document hosting service to organize and maintain its litigation-related document database.  Plaintiffs' counsel also retained a forensic actuary as an expert for the purposes of calculating classwide overtime damages.  *Id.* ¶ 15.  (8.)  Plaintiffs' counsel hired additional legal staff solely for the purpose of assisting with the litigation.  *Id.* ¶ 15. (9.) Plaintiffs' counsel conducted corporate depositions of two witnesses (Imani Breaker, the Head of Customer Care for the New York City Market and Regional President for the New York Region Jeffery Hirsch), and prepared for and defended the depositions of Nadia Oleniak, Ali Evans, and Kim Porter and Opt In Plaintiffs Ivy Bowen, Rudolfo Johns-Campbell, Dearise Wilson, Jesse Ruffin, Cherol Green, Christopher Gervais, and Joseph Sokolowski.  *Id.* ¶ 16.

In total, 13 additional Opt In Plaintiffs filed consents during the pre-mediation litigation period for a total of 17 Named and Opt In Plaintiffs.    *Id.* ¶ 7.

On or around March 2013, Plaintiffs and Defendants agreed to attempt to resolve this matter through non-binding private mediation, later advising the Court at the pretrial conference of their intention.  *Id.* ¶ 23.  Plaintiffs and Defendants agreed to narrow the scope of the proposed class for the purposes of mediation only, agreeing to mediate for those Customer Service Representatives employed in the New York City Market Call Centers (Flushing, Staten Island, Hudson Valley, and Bergen County, NJ) during the Class Period (the "Class Members").  *Id.* ¶ 25.  Narrowing the scope of the class for mediation was consistent with Class Counsel's

investigation which had revealed dissimilarities in policies relevant to class motion practice among TWC's different markets and regions.  *Id.* ¶ 25.

On March 3, 2013, Judge Furman issued an Order staying discovery pending mediation. *Id.* ¶ 26.  Plaintiffs' counsel prepared for mediation by researching and drafting a mediation statement, reviewing and selecting documentary evidence for presentation at mediation, coordinating the attendance of and preparing the class representatives for the mediation, providing Plaintiffs' expert with data for his class-wide calculation of damages, and formulating a mediation demand.  *Id.* ¶ 27.  On April 19, 2013, Plaintiffs and Defendants attended a mediation session with JAMS neutral David Geronemus.  *Id.* ¶ 28.  As a result of the mediation, the parties reached an agreement as to the resolution of class claims for all Customer Service Representatives employed within 6 years of the filing of the Complaint for the NY Settlement Class (Flushing, Staten Island, and Hudson County Call Centers) and within three years for the NJ Settlement Class (Bergen County Call Center).  *Id.* ¶ 29.  At all times during the settlement negotiation process, negotiations were conducted on an arm's-length basis.

After a number of additional discussions, the Parties agreed on the detailed, formalized terms memorialized in the class-wide settlement of this action, as set forth in Joint Stipulation of Settlement appended as Exhibit 1 to the Davis Declaration (the "Joint Stipulation," "Settlement," or "Settlement Agreement").  The Settlement Agreement resolves all claims alleged in the Amended Complaint, provides meaningful benefits to Class Members, and satisfies all of the "fairness" criteria for final approval.

On July 24, 2013, the Parties jointly moved for preliminary approval of the Settlement, scheduling a fairness hearing, and related relief, including, appointment of Plaintiffs' counsel as class counsel and approval of the proposed Class Notices.  Dkt. Nos. 57-59.  On August 5, 2013,

the Court granted the Parties' joint motion based on the Joint Stipulation and, among other things, approved the Class Notices.  Dkt. No. 60.

With Defendants' consent, Plaintiffs retained RG/2 Claims ("RG/2") as Settlement Claims Administrator.  Davis Decl. ¶ 34.  On August 30, 2013, RG/2 received two electronic files from Defendants' counsel which represented the list of the names and known contact information for the New Jersey Class Members and the New York Class Members.  Review of the data contained in the electronic files revealed there were 3,224 Class Members.  Lee Decl. ¶ 3.[2]  On September, 6, 2013, RG/2 caused to be served by First Class U.S. Mail the Notice of Class Action Settlement (referred to as the "Notice Packets") to the 3,217 New York Class Members.  Lee Decl. ¶ 3.   On September 9, 2013, RG/2 caused to be served by First Class U.S. Mail the Notice of Class Action Settlement, Claim Form and the Request for Exclusion Form (referred to as the "Notice Packets") to the seven Bergen County Class Members.  Lee Decl. ¶ 4.

Prior to mailing the 3,224 Notice Packets, in order to locate the most recent addresses for Class Members, RG/2 ran the Class Data list of 3,224 names and the addresses received from counsel through the United States Postal Service's National Change of Address database ("NCOA").  Lee Decl. ¶ 5.   Through the Class Notices, all Class Members have been notified of the terms of the settlements and their proposed relief, the allocation formula, the Class Members' right to opt out through the submission of an Exclusion Form, Class Counsel's anticipated fees, and all Class Members' rights to object to the settlement.  Lee Decl. ¶¶ 3-5.

After mailing the Notice Packets, 294 were returned by the United States Postal Service as undeliverable.  Seven of these Notice Packets had a forwarding address provided by the United States Postal Service.  RG/2 performed an address search for the 287 Notice Packets

---

[2] "Lee Decl." refers to the Declaration Claims Administrator Michael J. Lee attached as Exhibit B to Plaintiffs' Unopposed Motion for Certification of the Settlement Class, Final Approval of the Class Action Settlement, Approval of the FLSA Settlement, and Service Awards.

returned without a forwarding address to locate the most recent addresses.  RG/2 mailed new

Notice Packets to 191 Class Members for whom an updated address was located as well as the

seven Notice Packets for which a forwarding address was provided.  There are 96 Notice Packets

for which no new address was located.  RG/2 has received four  claim forms in this matter, 12

Request for Exclusion Forms, and no objections to the Settlement.  Lee Decl. ¶¶ 6, 7, and 8.

On December 3, 2013, Plaintiffs filed their Motion for Certification of the Settlement

Class, Final Approval of the Class Action Settlement, Approval of FLSA Settlement, and

Service Awards ("Motion for Final Approval").  The same day, Plaintiffs also filed their Motion

for Approval of Attorneys' Fees and Reimbursement of Expenses ("Motion for Fees").

Defendant did not oppose these motions.

The Court held a fairness hearing on December 16, 2013.  Having considered the

Motion for Final Approval, the Motion for Fees, the supporting declarations, and the

complete record in this matter, for good cause shown,

**NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND**

**DECREED:**

**Approval of the Settlement Agreement and Certification of Class**

1.      The Court hereby grants the Motion for Final Approval, approves the settlement

as fair, reasonable, and adequate, and certifies the Class as set forth in the Settlement Agreement

and this Order under Federal Rule of Civil Procedure 23.

2.      Rule 23(e) requires court approval for a class action settlement to ensure that it

is procedurally and substantively fair, reasonable, and adequate.  *See* Fed. R. Civ. P. 23(e).  To

determine whether a settlement is procedurally fair, courts examine the negotiating process

leading to the settlement.  *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc*., 396 F.3d 96, 116 (2d Cir.

2005); *D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001). To determine whether a settlement is substantively fair, Courts determine whether the settlement's terms are fair, reasonable and adequate according to the factors set forth in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974).

3.     Courts examine procedural and substantive fairness in light of the "strong judicial policy favoring settlements" of class action suits. *Wal-Mart Stores*, 396 F.3d at 116; *see also Spann v. AOL Time Warner, Inc.*, No. 02 Civ. 8238, 2005 WL 1330937, at *6 (S.D.N.Y. June 7, 2005) ("[P]ublic policy favors settlement, especially in the case of class actions."). "Absent fraud or collusion, [courts] should be hesitant to substitute [their] judgment for that of the parties who negotiated the settlement." *In re EVCI Career Colls. Holding Corp. Sec. Litig.*, No. 05 Civ. 10240, 2007 WL 2230177, at *4 (S.D.N.Y. July 27, 2007).

4.     "In evaluating the settlement, the Court should keep in mind the unique ability of class and defense counsel to assess the potential risks and rewards of litigation; a presumption of fairness, adequacy and reasonableness may attach to a class settlement reached in arms-length negotiations between experienced, capable counsel after meaningful discovery." *Clark v. Ecolab Inc.*, Nos. 07 Civ. 8623, 04 Civ. 4488, 06 Civ. 5672, 2010 WL 1948198, at *4 (S.D.N.Y. May 11, 2010) (internal quotation marks and citation omitted). The Court gives weight to the parties' judgment that the settlements are fair and reasonable. *See Torres v. Gristede's Operating Corp.*, No. 04 Civ. 3316, No. 08 Civ. 8531, No. 08 Civ. 9627, 2010 WL 5507892, at *3 (S.D.N.Y. Dec. 21, 2010); *Diaz v. E. Locating Serv. Inc.*, No. 10 Civ. 4082, 2010 WL 5507912, at *3 (S.D.N.Y. Nov. 29, 2010); *Clark*, 2010 WL 1948198, at *4.

**The Settlement Is Procedurally Fair**

5.      The settlement is procedurally fair, reasonable, adequate, and not a product of

collusion.  *See* Fed. R. Civ. P. 23(e); *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 184 (citing

*Joel A. v. Giuliani*, 218 F.3d 132, 138-39 (2d Cir. 2000)).  Here, the Settlement was reached after

Class Counsel had conducted a thorough investigation and evaluated the claims and after

extensive negotiations between the parties.

6.      After the filing of the complaint and prior to mediation, 13 former employees

joined it by filing Consent to Join forms with the Court for a total of 16 Named and Opt In

Plaintiffs.   Davis Decl. ¶ 7.

7.      After the filing of the lawsuit, the Parties engaged in discovery.  Among other

things: (a) Defendants deposed the Named Plaintiffs and seven Opt In Plaintiffs; (b) the Named

Plaintiffs deposed Defendants pursuant to Fed. R. Civ. P. 30(b)(6) taking two depositions of

corporate witnesses; (c) the Parties propounded and responded to numerous sets of document

requests and interrogatories; and (d) the Parties exchanged and analyzed thousands of documents

pertinent to the claims in the lawsuit.  Davis Decl. ¶¶ 9-24.

8.      Plaintiffs' counsel interviewed the Named Plaintiffs, the Opt In Plaintiffs and

more than 20 other Customer Service Representatives to determine the hours that they worked,

the wages they were paid, the nature of their daily activities, and other information relevant to

their claims.   *Id.*

9.      Plaintiffs' counsel conducted two witness interviews in the field and located a

witness – Lead Plaintiff Nadia Oleniak's supervisor – who signed an affidavit and provided key

testimony which proved useful in mediation.  *Id.*

10.    Plaintiffs' counsel assisted with the preparation of the complaints, the factual investigations of claims, the drafting of and responses to written discovery requests, the drafting and executing of declarations and multiple witness affidavits, and in preparing for settlement negotiations and mediation.  *Id.*

11.    Prior to the commencement of discovery, Plaintiffs' counsel retained a third-party document hosting service to organize and maintain its litigation-related document database. Plaintiffs' counsel also retained a forensic actuary as an expert for the purposes of calculating classwide overtime damages.  Plaintiffs' counsel hired additional legal staff solely for the purpose of assisting with the litigation.  *Id.*

12.    Plaintiffs' counsel also conducted extensive legal research on matters such as class certification standards and risk, factually similar class certification cases, summary judgment risk, risk attendant to "off the clock" overtime litigation, the appropriate scope of representative discovery sampling for class discovery, Defendants' anticipated *de minimis* defense, and Plaintiffs' damages.  *Id.*

13.    From these sources, Class Counsel was able to evaluate the strengths and weaknesses of Plaintiff's claims.  *Id.*

14.    Further, the aforementioned informal and formal discovery conducted by the Parties supports class certification of the settlement class identified by Class Counsel.  Notably, the class identified by Class Counsel is smaller than initially proposed and defined according to handbooks and policies uniform to the Time Warner Cable's New York City Market only, a fact which was corroborated by all of Class Counsel's independent interviews.  *Id.*

15.    While contested by Defendants, Class Counsel alleges that its investigation revealed that Plaintiffs were subject to the same unlawful practice, namely, that Defendants

required that Customer Service Representatives be "call ready" - powered on their computers with necessary software open and logged in to the telephone queue – at the start of their shift forcing them to perform necessary preparatory activities off the clock and without pay. *Id.* Consistent with the terms of the Settlement, the statements in this paragraph do not constitute an admission of liability by Defendants or a finding of liability by the Court.

16.     Similarly contested by Defendants, Class Counsel alleges that its investigation also revealed that Plaintiffs suffered the same injuries as Class Members – that Defendants failed to properly pay them lawful wages based on a common "off the clock" practice of not paying for certain overtime hours worked while performing their compensable pre-shift preparatory. *Id.* Consistent with the terms of the Settlement, the statements in this paragraph do not constitute an admission of liability by Defendants or a finding of liability by the Court

17.     Similarly contested by Defendants, Class Counsel alleges that its investigation revealed that Plaintiffs and the Class Members were subject to Defendants common policy of failing to keep accurate records of time worked. *Id.*  Consistent with the terms of the Settlement, the statements in this paragraph do not constitute an admission of liability by Defendants or a finding of liability by the Court

18.     On or around March 2013, Plaintiffs and Defendants agreed to attempt to resolve this matter through non-binding private mediation, later advising the Court at the pretrial conference of their intention. *Id.*

19.     Consisted with the Parties' investigation, Plaintiffs and Defendants agreed to narrow the scope of the proposed class for the purposes of mediation only, agreeing to mediate for those Customer Service Representatives employed in the New York City Market Call Centers (Flushing, Staten Island, Hudson Valley, and Bergen County, NJ) during the Class Period.

Narrowing the scope of the class for mediation was consistent with Class Counsel's investigation which had revealed dissimilarities in policies relevant to class motion practice among TWC's different markets and regions.   Davis Decl. ¶ 25.

20.    Plaintiffs' counsel prepared for mediation by researching and drafting a mediation statement, reviewing and selecting documentary evidence for presentation at mediation, coordinating the attendance of and preparing the class representatives for the mediation, providing Plaintiffs' expert with data for his classwide calculation of damages, and formulating a mediation demand.  Davis Decl. ¶ 27.

21.    On April 19, 2013, Plaintiffs and Defendants attended a mediation session with JAMS neutral David Geronemus.   Davis Decl. ¶ 28.

22.    As a result of the mediation, the parties reached an agreement as to the resolution of class claims for all Customer Service Representatives employed within 6 years of the filing of the Complaint for the NY Settlement Class (Flushing, Staten Island, and Hudson County Call Centers) and within three years for the NJ Settlement Class (Bergen County Call Center).  Davis Decl. ¶ 29.

23.    These arm's-length negotiations involving counsel for the Parties create a presumption that the settlement they achieved meets the requirements of due process.  *See Wal-Mart Stores*, 396 F.3d at 116; *Khait*, 2010 WL 2025106 at *5; *Clark*, 2010 WL 1948198 at *5.

24.    After a number of additional meetings and discussions, the Parties agreed on the detailed, formalized terms memorialized in the class-wide settlement of this action, as set forth in the Parties' Joint Stipulation of Settlement and Release, dated July 25, 2013, between Plaintiffs and Defendants.  Davis Decl. ¶ 30.

**The Settlement Is Substantively Fair**

25.     The settlement is substantively fair.  All of the factors set forth in *City of Detroit*, 495 F.2d at 463 which provides the analytical framework for evaluating the substantive fairness of a class action settlement, weigh in favor of final approval.

26.     The "Grinnell factors" are: (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.  *Grinnell*, 495 F.2d at 463.

27.     Litigation through trial would be complex, expensive, and long.  Therefore, the first *Grinnell* factor weighs in favor of final approval.

28.     The Class's reaction to the settlements was overwhelmingly positive.  The Class Notices included an explanation of the allocation formula.  The Class Notices also informed Class Members of their right to object to include or exclude themselves from the settlements, and explained how to do so.

29.     None of the Class Members submitted a timely objection to the Settlement, and just 12 of the 3,217 New York Class Members requested exclusion, resulting in a final Rule 23 Class numbering 3,205.  Lee Decl. ¶¶ 3, 5, and 8.  This overwhelmingly favorable response recommends final approval. "The fact that the vast majority of class members neither objected nor opted out is a strong indication" of fairness.  *Wright v. Stern*, 553 F. Supp. 2d 337, 344-45

(S.D.N.Y. 2008) (approving settlement where 13 out of 3,500 class members objected and 3 opted out); *see also Willix v. Healthfirst, Inc.*, No. 07 Civ. 1143, 2011 WL 754862, at *4 (E.D.N.Y. Feb. 18, 2011) (approving settlement where only 7 of 2,025 class member submitted timely objections and only 2 requested exclusion). Therefore, the second *Grinnell* factor weighs in favor of final approval.

30.   The parties have completed enough discovery to recommend settlement. The pertinent question is "whether counsel had an adequate appreciation of the merits of the case before negotiating." *Torres*, 2010 WL 5507892, at *5 (quoting *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 537 (3d Cir. 2004)). Here, over the course of more than a year before entering into settlement discussions, Plaintiffs obtained substantial informal and formal discovery, including documentary evidence, deposition testimony, and data on Class Members' damages. The third *Grinnell* factor weighs in favor of final approval.

31.   The risk of establishing liability and damages further weighs in favor of final approval. "Litigation inherently involves risks." *In re Painewebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 126 (S.D.N.Y. 1997). One purpose of a settlement is to avoid the uncertainty of a trial on the merits. *In re Ira Haupt & Co.*, 304 F. Supp. 917, 934 (S.D.N.Y. 1969). Here, the fact-intensive nature of Plaintiffs' claims and Defendant's defenses thereto presents risk. The settlements eliminate this uncertainty. The fourth and fifth *Grinnell* factors weigh in favor of final approval.

32.   The risk of obtaining and maintaining class status throughout trial also weighs in favor of final approval. A motion to decertify the class would likely require extensive discovery and briefing, possibly followed by an appeal, which would require additional rounds of briefing. Settlement eliminates the risk, expense, and delay inherent in this process. The sixth *Grinnell*

factor weighs in favor of final approval.

33.     The Defendant's ability to withstand a greater judgment is not clear.  Certainly, the settlements eliminated the risk of collection, as the Settlement Agreement identifies the method for payout of the Settlement Payment.  Moreover, even if protracted litigation were to yield a judgment larger than the Settlement Payment and although Defendant might be able to withstand a judgment greater than the Settlement Payment, "standing alone, [this] does not suggest that the settlement is unfair." *See Austrian and German Bank*, 80 F.Supp.2d at 178 n. 9 (citing *In re PaineWebber Ltd. Partnerships Litig.,* 171 F.R.D. 104, 129 (S.D.N.Y. 1997)) ("[T]he fact that a defendant is able to pay more than it offers in settlement does not, standing alone, indicate the settlement is unreasonable or inadequate.").  The seventh *Grinnell* factor is neutral and doesn't preclude final approval since all of the other *Grinnell* factors favor final approval.

34.     The substantial amount of the settlement weighs strongly in favor of final approval. The determination of whether a settlement amount is reasonable "does not involve the use of a 'mathematical equation yielding a particularized sum.'"  *Frank*, 228 F.R.D. at 186 (quoting *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d at 178).  "Instead, 'there is a range of reasonableness with respect to a settlement – a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion.'" *Id.* (quoting *Newman v. Stein,* 464 F.2d 689, 693 (2d Cir. 1972)).  In this case, based on Plaintiffs' pre-settlement investigation, the Class Members will receive substantial compensation for the underpayment of wages under the terms of the Settlement Agreement.  The eighth and ninth *Grinnell* factors favor final approval.

**Approval of the FLSA Settlement**

35.     The Court hereby approves the FLSA settlement.

36.     The standard for approval of an FLSA settlement is lower than for a Rule 23 settlement because an FLSA settlement does not implicate the same due process concerns as does a Rule 23 settlement.  *McKenna v. Champion Int'l Corp.*, 747 F.2d 1211, 1213 (8th Cir.1984); *Torres*, 2010 WL 5507892, at *6; *Clark*, 2010 WL 1948198, at *7.

37.     Courts approve FLSA settlements when they are reached as a result of contested litigation to resolve bona fide disputes.  *Clark*, 2010 WL 1948198, at *7; *Lynn's Food Stores, Inc. v. United States,* 679 F.2d 1350, 1353 n.8 (11th Cir. 1982).  "Typically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of the settlement."  *Torres*, 2010 WL 5507892, at *6 (citations omitted).  If the proposed settlement reflects a reasonable compromise over contested issues, the settlement should be approved.  *Lynn's Food Stores*, 697 F.3d at 1354; *Clark*, 2010 WL 1948198, at *7.

38.     The Court finds that the FLSA settlement was the result of contested litigation and arm's length negotiation.

**Dissemination of Notice**

39.     Pursuant to the Preliminary Approval Order, dated August 5, 2013 (Dkt. No. 60), the Class Notices were sent by first-class mail to each identified Class Member at his or her last known address (with re-mailing of returned Class Notices).  Lee Decl. ¶¶ 4-8.  The Court finds that the Class Notices fairly and adequately advised Class Members of the nature of the action, a description of the Class, the Class Members' right to exclude themselves from the settlement, and the right of all Class Members to object to the settlements, to be represented by counsel, and to appear at the fairness hearing.  Class Members were provided

15

the best notice practicable under the circumstances.  The Court further finds that the Class

Notices and distribution of such Class Notices comported with all constitutional requirements,

including those of due process.

### Award of Fees and Costs to Class Counsel's Firm

40.     On August 5, 2013 (Dkt. No. 60), the Court appointed Christopher Q. Davis

as Class Counsel because he met all of the requirements of Federal Rule of Civil Procedure

23(g).

41.     Class Counsel and the attorneys with his Firm, Stoll, Glickman & Bellina, LLP,

did substantial work identifying, investigating, prosecuting, and settling Plaintiffs' and the Class

Members' claims.

42.     Class Counsel has substantial experience prosecuting and settling employment

class actions, including wage and hour class actions, and is well-versed in wage and hour law

and in class action law.  *See* Davis Decl. ¶¶ 47-60.

43.     The work that Class Counsel and his Firm have performed in litigating and

settling this case demonstrates their commitment to the Class and to representing the Class's

interests. Class Counsel has committed substantial resources to prosecuting this case and has

obtained commendable results, including recovering approximately 75% of the Class Members'

underpayment and securing a very high participation rate among the putative class and no

objectors to the Settlement.

44.     The Court hereby grants Plaintiff's Motion for Attorneys' Fees and awards

Class Counsel's Firm $1.25 million in attorneys' fees or one-third of the Maximum Settlement

Amount.

45.     The Court finds that the amount of fees requested is fair and reasonable using the

"percentage-of-recovery" method, which is consistent with the "trend in this Circuit."  See

*McDaniel v. Cty. Of Schenectady,* 595 F.3d 411, 417 (2d Cir. 2010); *Diaz,* 2010 WL 5507912, at

*7-8 (following percentage-of-the-fund method); *deMunecas,* 2010 WL 3322580, at * 8-9

(same); *Clark,* 2010 WL 1948198, at *8-9 (same); *Reyes v. Buddha-Bar NYC,* No. 08 Civ. 2494,

2009 WL 5841177, at *4 (S.D.N.Y. May 28, 2009) (same); *Strougo ex rel. Brazilian Equity*

*Fund, Inc. v. Bassini,* 258 F. Supp. 2d 254, 261-62 (S.D.N.Y. 2003) (collecting cases adopting

the percentage-of-the-fund method); *In re NASDAQ Market-Makers Antitrust Litig.,* 187 F.R.D.

465, 483-85 (S.D.N.Y. 1998) (same).

46.     In wage and hour class action lawsuits, public policy favors a common fund

attorneys' fee award.  *See Frank,* 228 F.R.D. at 189.  Where relatively small claims can only be

prosecuted through aggregate litigation, "private attorneys general" play an important role.

*Deposit Guar. Nat'l Bank v. Roper,* 445 U.S. 326, 338-39 (1980).  Attorneys who fill the private

attorney general role must be adequately compensated for their efforts.  If not, wage and hour

abuses would go without remedy because attorneys would be unwilling to take on the risk.

*Goldberger v. Integrated Res. Inc.,* 209 F.3d 43, 51 (2d Cir. 2000) (commending the general

"sentiment in favor of providing lawyers with sufficient incentive to bring common fund cases

that serve the public interest").  Adequate compensation for attorneys who protect wage and hour

rights furthers the remedial purposes of the FLSA and the NYLL.  *See Braunstein v. E. Photo.*

*Labs., Inc.,* 600 F.2d 335, 336 (2d Cir. 1975), cert. denied, 441 U.S. 944 (1979) (discussing

remedial purpose of FLSA); *Ramos v. Marksue Realty Corp.,* 586 F. Supp. 488, 492 (S.D.N.Y.

1984) (discussing remedial purpose of  NYLL); *Samiento v. World Yacht Inc.,* 883 N.E.2d 990,

994 (N.Y. 2008) (discussing remedial purpose of NYLL).

47.     Class Counsel's request for one-third of the Qualified Settlement Fund, or the

Maximum Settlement Amount as that term is defined in Paragraph I.12 of the Settlement Agreement, is reasonable and "consistent with the norms of class litigation in this circuit." *Diaz*, 2010 WL 5507912, at *7 (quoting *Gilliam v. Addicts Rehab. Ctr. Fund*, No. 05 Civ. 3452, 2008 WL 782596, at *5 (S.D.N.Y. Mar. 24, 2008)); *see also deMunecas*, 2010 WL 3322580, at *8 (granting class counsel 33% of settlement fund in wage and hour class action); *Clark*, 2010 WL 1948198, at *8-9 (awarding class counsel one-third of settlement fund in wage and hour class action*); Duchene v. Michael Cetta, Inc.*, No. 06 Civ.4576, 2009 WL 5841175, at *3 (S.D.N.Y. Sept. 10, 2009) (awarding class counsel 32.2% of $3,150,000 fund in FLSA and NYLL case); *Mohney v. Shelly's Prime Steak, Stone Crab & Oyster Bar*, No. 06 Civ. 4270, 2009 WL 5851465, at *5 (S.D.N.Y. Mar. 31, 2009) (awarding 33% of $3,265,000 fund in FLSA and NYLL case); *Stefaniak v. HSBC Bank USA, N.A.*, No. 05 Civ. 720S, 2008 WL 7630102, at *3 (W.D.N.Y. June 28, 2008) (awarding 33% of $2.9 million fund in FLSA and NYLL case); *Maley v. Del Global Tech. Co.*, No. 00 Civ. 8495, 186 F. Supp. 2d 358, 370 (awarding 33 1/3% fee on fund valued at $11.5 million); *Cohen v. Apache Corp.*, No. 89 Civ. 76, 1993 WL 126560, at *1 (S.D.N.Y. Apr. 21, 1993) (awarding 33 1/3% of $7.75 million fund).

48.     Class Counsel risked time and effort and advanced costs and expenses, with no ultimate guarantee of compensation.  A percentage-of-recovery fee award of one-third (1/3), or 33.3%, amounting to a modest multiplier of 1.67% over the combined Lodestar for Class Counsel and his predecessor firm ($748,982.50) is consistent with the Second Circuit's decision in *Arbor Hill Concerned Citizens Neighborhood Association v. County of Albany*, where the Court held that a "presumptively reasonable fee" takes into account what a "reasonable, paying client" would pay.  *Id.* at 493 F.3d 110, 111-12 (2d Cir. 2007), *amended on other grounds by* 522 F.3d 182 (2d Cir. 2008).  While Arbor Hill is not controlling here because it does not address a

common fund fee petition, it provides persuasive support for a one-third (1/3) recovery in a case like this one where Class Counsel's fee entitlement is entirely contingent upon success. *Diaz*, 2010 WL 5507912, at *7; *Clark*, 2010 WL 1948198, at *9.

49.     All of the factors in *Goldberger v. Integrated Res. Inc*., 209 F.3d 43, 50 (2d Cir. 2000) weigh in favor of a fee award of one-third (1/3) of the Maximum Settlement Amount.

50.     Moreover, "[i]n choosing the proper baseline for calculation of fee percentage, our Circuit case law directs courts to focus on fairly compensating counsel for work actually performed, given that 'the entire fund, and not some portion [of it], is created through the efforts of counsel at the instigation of the entire class. An allocation of fees by percentage should therefore be awarded on the basis of the total funds made available, whether claimed or not.' " *Alleyne v. Time Moving and Storage, Inc.*, 264 F.R.D. 41, 58-59 (E.D.N.Y. 2010) (*citing and quoting Masters v. Wilhelmina Model Agency, Inc.*, 473 F.3d 423, 437 (2d. Cir.2007)) (internal quotes omitted).

51.     The fact that Class Counsel's fee award will not only compensate them for time and effort already expended, but for time that they will be required to spend administering the settlement going forward also supports their fee request. *Diaz*, 2010 WL 5507912, at *7; *Clark*, 2010 WL 1948198, at *9.

52.     The Court also awards Class Counsel reimbursement of their litigation expenses in the amount of $40,914.21, which the Court deems to be reasonable.  Courts typically allow counsel to recover their reasonable out-of-pocket expenses. *See In re Indep. Energy Holdings PLC Sec. Litig.,* 302 F. Supp. 2d 180, 183 n.3 (S.D.N.Y. 2003) (citing *Miltland Raleigh-Durham v. Myers*, 840 F. Supp. 235, 239 (S.D.N.Y. 1993)).   Both the attorneys' fees awarded and the reimbursement of litigation costs and expenses shall be paid from the Maximum Settlement

Amount.

**Service Awards in the form of Enhancement Payments**

53.     The Court finds reasonable representative service awards in the following

amounts for Nadia Oleniak, Ali Evans, Kim Porter, Christopher Gervais, Dearise Wilson and

Joseph Sokolowski for their leadership and effort expended in connection with the initiation

and maintenance of the litigation:

> i.     Nadia Oleniak - $20,000;
>
> ii.    Ali Evans, Kim Porter, Christopher Gervais, Dearise Wilson, and Joseph
>        Sokolowski - $10,000 each.

54.     Such service awards are common in class action cases and are important to

compensate plaintiffs for the time and effort expended in assisting the prosecution of the

litigation, the risks incurred by becoming and continuing as a litigant, and any other burdens

sustained by plaintiffs.   *See Torres*, 2010 WL 5507892, at *8 (finding reasonable service

awards of $15,000 to each of 15 named plaintiffs); *Clark*, 2010 WL 1948198, at *9 (granting

service awards of $10,000 to each of 7 named plaintiffs); *see also Roberts v. Texaco, Inc.,*

979 F. Supp. 185, 200-01 (S.D.N.Y. 1997) ("The guiding standard in determining an

incentive award is broadly stated as being the existence of special circumstances including

the personal risk (if any) incurred by the plaintiff-applicant in becoming and continuing as a

litigant, the time and effort expended by that plaintiff in assisting in the prosecution of the

litigation or in bringing to bear added value (e.g., factual expertise), any other burdens

sustained by that plaintiff in lending himself or herself to the prosecution of the claims, and,

of course, the ultimate recovery.").

55.     Class Counsel has attested to the personal costs assumed and risks taken by the

Class Representatives in maintaining the litigation; the Court deems the proposed service

awards to be reasonable in light of their efforts.  *See* Davis Decl. ¶¶ 61-65.  The service awards will be deducted from the Maximum Settlement Amount, and are in addition to any payment to which Plaintiffs are otherwise entitled as Participating Class Members.

**Conclusion**

56.     "Final Approval" of the Settlement or the "Effective Date" shall be thirty-one (31) days after the Court has entered Judgment, if no party has sought rehearing, reconsideration, or appellate review; or if rehearing, reconsideration and appellate review is sought, the day after any and all avenues of rehearing, reconsideration and appellate review have been exhausted and no further rehearing, reconsideration or appellate review is permitted, and the time for seeking such review has expired and the Judgment has not been subject to fundamental change as a result of rehearing, reconsideration or appellate review. Settlement Agreement ¶ I.10.

57.     The Settlement Administrator Fees, Class Representative Payments, Class Counsel's Fees and Costs Payment, Defendants' share of payroll taxes, and the Net Aggregate Settlement Amount will be deducted from the Maximum Settlement Amount.   Settlement Agreement ¶ III.36.

58.     Defendants shall pay the Net Aggregate Settlement Amount, as that term is defined in Paragraph I.13 of the Settlement Agreement, to the Settlement Administrator within seven (7) days of the Effective Date.  *Id.*

59.     Defendants shall provide to the Settlement Administrator the social security numbers of the Class Representatives and the Participating Class Members to facilitate the payment of the amounts due under the Settlement Agreement.

60.     The Settlement Administrator will pay the Class Representatives and Participating Class Members the amounts due under the Settlement Agreement within seven (7) days after

receiving the Net Aggregate Settlement Amount from Defendants.  *Id.*

61.     The award of attorneys' fees and costs will be deducted from the Maximum Settlement Amount and paid to Class Counsel within fourteen (14) business days of the Effective Date via the Claims Administrator.  *Id.*

62.     Deductions for the Participating Class Member's share of federal, state and local income tax withholding and the employee share of the FICA tax will be made according to Subparagraph 36(h)(i) through (vi) of Paragraph III of the Settlement Agreement.  Tax attribution and reporting for the Net Settlement Award, Payment of Class Counsel Fees and Costs and Class Representative Payments will be governed by the same.

63.     Any monies in the Net Aggregate Settlement Amount that are not distributed to eligible Class Members because the claims do not meet the minimum 80% threshold will be redistributed on a pro rata basis to the Participating Class Members, as that term is defined in Paragraph I.15 of the Settlement Agreement, up to the 80% threshold, based on the formula identified in Subparagraph 36 (h)(vii) of Paragraph III of the Settlement Agreement.

64.     Any unclaimed amounts above the 80% minimum guarantee will be retained by Defendants.

65.     This action shall be dismissed on the merits with prejudice and all Participating Class Members shall be and are permanently barred from prosecuting against the Releasees as defined in the Settlement Agreement at Subparagraph 51 of Paragraph V.

66.     Though the Court retains jurisdiction over this action for the purpose of enforcing the Settlement Agreement, the judgment is a Final Judgment in accordance with the Settlement Agreement.  The parties shall abide by all terms of the Settlement Agreement and this Order.

**SO ORDERED**:

_____

Hon. Katherine Polk Failla

Date: December 17, 2013