UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

NADIA OLENIAK, ALI EVANS, and KIM PORTER, individually and on behalf of all others similarly situated,

    Plaintiffs,

vs.

TIME WARNER CABLE INC, TIME WARNER ENTERTAINMENT COMPANY LP, TIME WARNER CABLE LLC, and TIME WARNER NY CABLE LLC D/B/A TIME WARNER CABLE SHARED SERVICES,

    Defendants.

Civil Action No. 12-cv-03971 (KPF)

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: October 30, 2014

# ORDER GRANTING MOTION FOR CERTIFICATION OF THE SUPPLEMENTAL SETTLEMENT CLASS AND FINAL APPROVAL OF SUPPLEMENTAL CLASS ACTION SETTLEMENT, AND APPROVAL OF CLAIMS ADMINISTRATION OF EXPENSES

Plaintiffs initiated this Action against Defendants on May 18, 2012 pursuant to Federal Rule of Civil Procedure 23 ("FRCP"), the Fair Labor Standards Act of 1938, 29 U.S.C. §§ 201 *et seq.* ("FLSA") and the New York Labor Law, Ch. 31 of the Consolidated Laws of New York ("NYLL"). Plaintiffs' pleading alleged "hybrid collective and class action" claims on behalf of themselves and others who are similarly situated (the "Plaintiffs"). *See* Davis Dec1. ¶ 3.[1] Plaintiffs, who worked as Customer Service Representatives in Defendants' Flushing, Queens Call Center, allege that they and similarly situated employees in across the country were not paid proper overtime compensation. *Id.* ¶ 5. An Amended Complaint was filed May 22, 2012. *Id* ¶ 4.

---

[1] "Davis Decl." refers to the Declaration of Christopher Q. Davis previously filed in support of Plaintiffs' Unopposed Motion for Certification of the Settlement Class, Final Approval of the Class Action Settlement, Approval of the FLSA Settlement, and Service Awards. See Dkt. 68-1.

1

The lawsuit sought, *inter alia*, certification of this Action as a "collective action" under the FLSA and as a "class action" under FRCP 23 and state law, and sought unpaid overtime wages, prejudgment interest, liquidated damages, and attorneys' fees and costs. In response to the Lawsuit, on June 13, 2012, Defendants timely answered Plaintiffs' Amended Complaint, denying Plaintiffs' allegations. *Id* ¶ 4.

The Parties engaged in substantial discovery and active litigation of the lawsuit, including: (1.) Plaintiffs' counsel conducted investigation and legal research on the underlying merits of class members' claims, the damages to which they were entitled, and the propriety of class certification. *Id.* ¶ 9. (2.) Plaintiffs' counsel interviewed the Lead Plaintiffs (i.e. the Named Plaintiffs and the Opt In Plaintiffs) and more than 20 other Customer Service Representatives to determine the hours that they worked, the wages they were paid, the nature of their daily activities, and other information relevant to their claims. *Id* ¶ 10. (3.) Plaintiffs' counsel conducted two witness interviews in the field and located a witness - Named Plaintiff Nadia Oleniak's supervisor - who signed an affidavit and provided key testimony which proved useful in mediation. *Id* ¶ 11. (4.) Plaintiffs' counsel also obtained and reviewed thousands of pages of documents from Plaintiffs and other opt ins, as well as thousands of documents produced by Defendants during discovery, including employment handbooks, job descriptions, organizational charts, time sheets, training materials, telephone call reports, individual pay stubs, pay slips and hiring materials. *Id.* ¶ 12. (5.) Plaintiffs' counsel assisted with the preparation of the Complaints, the factual investigations of claims, the drafting of and responses to written discovery requests, the drafting and executing of declarations and multiple witness affidavits, and in preparing for settlement negotiations and mediation. *Id.* ¶ 13. (6.) Plaintiffs' counsel also conducted extensive legal research on matters such as class certification standards and risk, factually similar class

certification cases, summary judgment risk, risk attendant to "off the clock" overtime litigation, the appropriate scope of representative discovery sampling for class discovery, Defendants' anticipated *de minimis* defense, and Plaintiffs' damages. *Id.* ¶ 14. (7.) Plaintiffs' counsel retained a third-party document hosting service to organize and maintain its litigation-related document database. Plaintiffs' counsel also retained a forensic actuary as an expert for the purposes of calculating classwide overtime damages. *Id.* ¶ 15. (8.) Plaintiffs' counsel hired additional legal staff solely for the purpose of assisting with the litigation. *Id.* ¶ 15. (9.) Plaintiffs' counsel conducted corporate depositions of two witnesses (Imani Breaker, the Head of Customer Care for the New York City Market and Regional President for the New York Region Jeffery Hirsch), and prepared for and defended the depositions of Nadia Oleniak, Ali Evans, and Kim Porter and Opt In Plaintiffs Ivy Bowen, Rudolfo Johns-Campbell, Dearise Wilson, Jesse Ruffin, Cherol Green, Christopher Gervais, and Joseph Sokolowski. *Id.* ¶ 16.

In total, 13 additional Opt In Plaintiffs filed consents during the pre-mediation litigation period for a total of 17 Named and Opt In Plaintiffs. *Id.* ¶ 7.

On or around March 2013, Plaintiffs and Defendants agreed to attempt to resolve this matter through non-binding private mediation, later advising the Court at the pretrial conference of their intention. *Id.* ¶ 23. Plaintiffs and Defendants agreed to narrow the scope of the proposed class for the purposes of mediation only, agreeing to mediate for those Customer Service Representatives employed in the New York City Market Call Centers (Flushing, Staten Island, Hudson Valley, and Bergen County, NJ) during the Class Period (the "Class Members"). *Id.* ¶ 25. Narrowing the scope of the class for mediation was consistent with Class Counsel's investigation which had revealed dissimilarities in policies relevant to class motion practice among TWC's different markets and regions. *Id.* ¶ 25.

On March 3, 2013, Judge Furman issued an Order staying discovery pending mediation. *Id.* ¶ 26. Plaintiffs' counsel prepared for mediation by researching and drafting a mediation statement, reviewing and selecting documentary evidence for presentation at mediation, coordinating the attendance of and preparing the class representatives for the mediation, providing Plaintiffs' expert with data for his classwide calculation of damages, and formulating a mediation demand. *Id.* ¶ 27. On April 19, 2013, Plaintiffs and Defendants attended a mediation session with JAMS neutral David Geronemus. *Id.* ¶ 28. As a result of the mediation, the parties reached an agreement as to the resolution of class claims for all Customer Service Representatives employed within 6 years of the filing of the Complaint for the NY Settlement Class (Flushing, Staten Island, and Hudson County Call Centers) and within three years for the NJ Settlement Class (Bergen County Call Center). *Id.* ¶ 29. At all times during the settlement negotiation process, negotiations were conducted on an arm's-length basis.

After a number of additional discussions, the Parties agreed on the detailed, formalized terms memorialized in the class-wide settlement of this action, as set forth in Joint Stipulation of Settlement appended as Exhibit I to the Davis Declaration (the "Joint Stipulation," "Settlement," or "Settlement Agreement"). The Settlement Agreement resolves all claims alleged in the Amended Complaint, provides meaningful benefits to Class Members, and satisfies all of the "fairness" criteria for final approval.

On July 24, 2013, the Parties jointly moved for preliminary approval of the Settlement, scheduling a fairness hearing, and related relief, including, appointment of Plaintiffs' counsel as class counsel and approval of the proposed Class Notices. Dkt. Nos. 57-59. On August 5, 2013, the Court granted the Parties' joint motion based on the Joint Stipulation and, among other things, approved the Class Notices. Dkt. No. 60.

During the course of the claims administration process after the Court had issued its final approval of the original settlement, the Parties discovered over the course of several months that there were approximately 272 additional putative class members who were not mailed the notice of the original settlement of this action. Defendants agreed to provide compensation to these individuals at the same rate as the original class members and will fund an additional amount to do so. The parties memorialized this additional settlement in a Joint Stipulation of Supplemental Class Settlement, a true and correct fully executed copy of which is attached to the Carr Declaration.

On July 24, 2014, the Parties filed their Motion to: (1) preliminarily approve the settlement memorialized in the Joint Stipulation of Supplemental Class Settlement and Release between Plaintiffs and Defendants ;(2) provisionally certify the proposed supplemental settlement class under Federal Rule of Civil Procedure 23(b)(3) and Section 29 U.S. C. § 216(b) for settlement purposes only; (3) appoint Stoll, Glickman & Bellina, LLP as Class Counsel ("Class Counsel"); and (4) approve the Notices of Class Action Settlement ("Proposed Notices"). Dkt. 101-103. By Order dated July 26, 2014, this Court entered its Order grating the Motion to Preliminarily to Approve the Supplemental Settlement. Dkt. 104.

With Defendants' consent, Plaintiffs retained RG/2 Claims ("RG/2") as Settlement Claims Administrator. Carr Decl ¶ 4. On August 7, 2014, RG/2 received one electronic file from Defendants' counsel which represented the list of the names and known contact information for the Supplemental New Jersey Class Members and the Supplemental New York Class Members. Review of the data contained in the electronic files revealed there were 272 Class Members. Baldwin Decl. ¶ 2.[2] On August 19, 2014, RG/2 caused to be served by First

---

[2] "Baldwin Decl." refers to the Declaration Claims Administrator Melissa Baldwin filed concurrently with the Motion for Certification of the Settlement Class, Final Approval of the Class Action Settlement, and Approval of the

5

Class U.S. Mail the Notice of Class Action Settlement (referred to as the "Notice Packets") to the 254 Supplemental New York Class Members. Baldwin Decl. ¶ 3. On August 19, 2014, RG/2 caused to be served by First Class U.S. Mail the Notice of Class Action Settlement, Claim Form and the Request for Exclusion Form (referred to as the "Notice Packets") to the 18 Supplemental Bergen County Class Members. Baldwin Decl. ¶ 4.

Prior to mailing the 272 Notice Packets, in order to locate the most recent addresses for Class Members, RG/2 ran the Class Data list of 272 names and the addresses received from counsel through the United States Postal Service's National Change of Address database ("NCOA"). Baldwin Decl. ¶ 5. Through the Class Notices, all Class Members have been notified of the terms of the settlements and their proposed relief, the allocation formula, the Class Members' right to opt out through the submission of an Exclusion Form, Class Counsel's anticipated fees, and all Class Members' rights to object to the settlement. Baldwin Decl. ¶¶ 3-5.

After mailing the Notice Packets, 36 were returned by the United States Postal Service as undeliverable. Three of these Notice Packets had a forwarding address provided by the United States Postal Service. RG/2 performed an address search for the 33 Notice Packets returned without a forwarding address to locate the most recent addresses. RG/2 mailed new Notice Packets to 27 Class Members for whom an updated address was located as well as the three Notice Packets for which a forwarding address was provided. There are 6 Notice Packets for which no new address was located. RG/2 has received four claim forms in this matter, no Request for Exclusion Forms, and no objections to the Settlement. Baldwin Decl. ¶¶ 6, 7, and 8.

On October 24, 2014, the Parties filed their Motion for Certification of the Supplemental Settlement Class and Final Approval of the Supplemental Class Action Settlement ("Motion for Final Approval").

---

FLSA Settlement.

The Court held a fairness hearing on October 30, 2014.  Having considered the Motion for Final Approval, the supporting declarations, and the complete record in this matter, for good cause shown,

**NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED:**

**Approval of the Supplemental Settlement Agreement and Certification of Supplemental Settlement Class**

1. The Court hereby grants the Motion for Final Approval, approves the supplemental settlement as fair, reasonable, and adequate, and certifies the Supplemental Settlement Class as set forth in the Supplemental Settlement Agreement and this Order under Federal Rule of Civil Procedure 23.

2. Rule 23(e) requires court approval for a class action settlement to ensure that it is procedurally and substantively fair, reasonable, and adequate.  *See* Fed. R. Civ. P. 23(e). To determine whether a settlement is procedurally fair, courts examine the negotiating process leading to the settlement.  *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116 (2d Cir. 2005); *D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001). To determine whether a settlement is substantively fair, Courts determine whether the settlement's terms are fair, reasonable and adequate according to the factors set forth in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974).

3. Courts examine procedural and substantive fairness in light of the "strong judicial policy favoring settlements" of class action suits.  *Wal-Mart Stores*, 396 F.3d at 116; see also *Spann v. AOL Time Warner, Inc.*, No. 02 Civ. 8238, 2005 WL 1330937, at *6 (S.D.N.Y. June 7, 2005) ("[P]ublic policy favors settlement, especially in the case of class actions."). "Absent fraud or collusion, [courts] should be hesitant to substitute [their] judgment for that of the parties who negotiated the settlement." *In re EVCI Career Coils. Holding Corp. Sec. Litig.*, No. 05 Civ.

7

10240, 2007 WL 2230177, at *4 (S.D.N.Y. July 27, 2007).

4. "In evaluating the settlement, the Court should keep in mind the unique ability of class and defense counsel to assess the potential risks and rewards of litigation; a presumption of fairness, adequacy and reasonableness may attach to a class settlement reached in arms-length negotiations between experienced, capable counsel after meaningful discovery." *Clark v. Ecolab Inc.*, Nos. 07 Civ. 8623, 04 Civ. 4488, 06 Civ. 5672, 2010 WL 1948198, at *4 (S.D.N.Y. May 11, 2010) (internal quotation marks and citation omitted). The Court gives weight to the parties' judgment that the settlements are fair and reasonable. *See Torres v. Gristede 's Operating Corp.*, No. 04 Civ. 3316, No. 08 Civ. 8531, No. 08 Civ. 9627, 2010 WL 5507892, at *3 (S.D.N.Y. Dec. 21, 2010); *Diaz v. E. Locating Serv. Inc.*, No. 10 Civ. 4082, 2010 WL 5507912, at *3 (S.D.N.Y. Nov. 29, 2010); *Clark*, 2010 WL 1948198, at *4.

### The Settlement Is Procedurally Fair

5. The settlement is procedurally fair, reasonable, adequate, and not a product of collusion. *See* Fed. R. Civ. P. 23(e); *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 184 (citing *Joel A. v. Giuliani*, 218 F.3d 132, 138-39 (2d Cir. 2000)). Here, the Settlement was reached after Class Counsel had conducted a thorough investigation and evaluated the claims and after extensive negotiations between the parties.

6. After the filing of the complaint and prior to mediation, 13 former employees joined it by filing Consent to Join forms with the Court for a total of 16 Named and Opt In Plaintiffs. Davis Decl. ¶ 7.

7. After the filing of the lawsuit, the Parties engaged in discovery. Among other things: (a) Defendants deposed the Named Plaintiffs and seven Opt In Plaintiffs; (b) the Named Plaintiffs deposed Defendants pursuant to Fed. R. Civ. P. 30(b)(6) taking two depositions of corporate witnesses; (c) the Parties propounded and responded to numerous sets of document

requests and interrogatories; and (d) the Parties exchanged and analyzed thousands of documents pertinent to the claims in the lawsuit. Davis Decl. ¶¶ 9-24.

8. Plaintiffs' counsel interviewed the Named Plaintiffs, the Opt In Plaintiffs and more than 20 other Customer Service Representatives to determine the hours that they worked, the wages they were paid, the nature of their daily activities, and other information relevant to their claims. *Id.*

9. Plaintiffs' counsel conducted two witness interviews in the field and located a witness — Lead Plaintiff Nadia Oleniak's supervisor — who signed an affidavit and provided key testimony which proved useful in mediation. *Id.*

10. Plaintiffs' counsel assisted with the preparation of the complaints, the factual investigations of claims, the drafting of and responses to written discovery requests, the drafting and executing of declarations and multiple witness affidavits, and in preparing for settlement negotiations and mediation. *Id.*

11. Prior to the commencement of discovery, Plaintiffs' counsel retained a third-party document hosting service to organize and maintain its litigation-related document database. Plaintiffs' counsel also retained a forensic actuary as an expert for the purposes of calculating classwide overtime damages. Plaintiffs' counsel hired additional legal staff solely for the purpose of assisting with the litigation. *Id*.

12. Plaintiffs' counsel also conducted extensive legal research on matters such as class certification standards and risk, factually similar class certification cases, summary judgment risk, risk attendant to "off the clock" overtime litigation, the appropriate scope of representative discovery sampling for class discovery, Defendants' anticipated *de minimis* defense, and Plaintiffs' damages. *Id*

13. From these sources, Class Counsel was able to evaluate the strengths and weaknesses of Plaintiff's claims. *Id* .

14. Further, the aforementioned informal and formal discovery conducted by the Parties supports class certification of the supplemental settlement class.

15. While contested by Defendants, Class Counsel's investigation revealed that Plaintiffs were subject to the same unlawful practice, namely, that Defendants allegedly required that Customer Service Representatives be "call ready" - powered on their computers with necessary software open and logged in to the telephone queue — at the start of their shift forcing them to perform necessary preparatory activities off the clock and without pay. *Id*

16. Similarly contested by Defendants, Class Counsel's investigation also revealed that Plaintiffs suffered the same injuries as Class Members — that Defendants allegedly failed to properly pay them lawful wages based on a common "off the clock" practice of not paying for certain overtime hours worked while performing their compensable pre-shift preparatory. *Id*

17. Similarly contested by Defendants, Class Counsel's investigation revealed that Plaintiffs and the Class Members were allegedly subject to Defendants common policy of failing to keep accurate records of time worked. *Id* .

18. On or around March 2013, Plaintiffs and Defendants agreed to attempt to resolve this matter through non-binding private mediation, later advising the Court at the pretrial conference of their intention. *Id* .

19. Consisted with the Parties' investigation, Plaintiffs and Defendants agreed to narrow the scope of the proposed class for the purposes of mediation only, agreeing to mediate for those Customer Service Representatives employed in the New York City Market Call Centers (Flushing, Staten Island, Hudson Valley, and Bergen County, NJ) during the Class Period.

Narrowing the scope of the class for mediation was consistent with Class Counsel's investigation which had revealed dissimilarities in policies relevant to class motion practice among TWC's different markets and regions. Davis Decl. ¶ 25.

20. Plaintiffs' counsel prepared for mediation by researching and drafting a mediation statement, reviewing and selecting documentary evidence for presentation at mediation, coordinating the attendance of and preparing the class representatives for the mediation, providing Plaintiffs' expert with data for his classwide calculation of damages, and formulating a mediation demand. Davis Decl. ¶ 27.

21. On April 19, 2013, Plaintiffs and Defendants attended a mediation session with JAMS neutral David Geronemus. Davis Decl. ¶ 28.

22. As a result of the mediation, the parties reached an agreement as to the resolution of class claims for all Customer Service Representatives employed within 6 years of the filing of the Complaint for the NY Settlement Class (Flushing, Staten Island, and Hudson County Call Centers) and within three years for the NJ Settlement Class (Bergen County Call Center). Davis Decl. ¶ 29.

23. These arm's-length negotiations involving counsel for the Parties create a presumption that the settlement they achieved meets the requirements of due process. *See Wal-Mart Stores*, 396 F.3d at 116; *Khait*, 2010 WL 2025106 at *5; *Clark*, 2010 WL 1948198 at *5.

24. After a number of additional meetings and discussions, the Parties agreed on the detailed, formalized terms memorialized in the class-wide settlement of this action, as set forth in the Parties' Joint Stipulation of Settlement and Release, dated July 25, 2013, between Plaintiffs and Defendants. Davis Decl. ¶ 30.

25. During the course of the claims administration process after the Court had issued

its final approval of the original settlement, the Parties discovered over the course of several months that there were approximately 272 additional putative class members who were not mailed the notice of the original settlement of this action.  Defendants have agreed to provide compensation to these individuals at the same rate as the original class members and will fund an additional amount to do so.  The parties memorialized this additional settlement in a Joint Stipulation of Supplemental Class Settlement.

**The Supplemental Settlement Is Substantively Fair**

26. The supplemental settlement is substantively fair. All of the factors set forth in *City of Detroit*, 495 F.2d at 463 which provides the analytical framework for evaluating the substantive fairness of a class action settlement, weigh in favor of final approval.

27. The "Grinnell factors" are: (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.  *Grinnell*, 495 F.2d at 463.

28. Litigation through trial would be complex, expensive, and long. Therefore, the first *Grinnell* factor weighs in favor of final approval.

29. The Class's reaction to the supplemental settlement was overwhelmingly positive. The Supplemental Class Notices included an explanation of the payments.  The Supplemental Class Notices also informed Supplemental Class Members of their right to object, to include or exclude themselves from the settlements, and explained how to do so.

30. None of the Supplemental Class Members submitted a timely objection to the Supplemental Settlement, and just none of the 254 Supplemental New York Class Members requested exclusion, resulting in a final Rule 23 Class numbering 254. Baldwin Decl. ¶¶ 3, 5, and 8. This overwhelmingly favorable response recommends final approval. "The fact that the vast majority of class members neither objected nor opted out is a strong indication" of fairness. *Wright v. Stern*, 553 F. Supp. 2d 337, 344-45 (S.D.N.Y. 2008) (approving settlement where 13 out of 3,500 class members objected and 3 opted out); *see also Willix v. Healthfirst, Inc.*, No. 07 Civ. 1143, 2011 WL 754862, at *4 (E.D.N.Y. Feb. 18, 2011) (approving settlement where only 7 of 2,025 class member submitted timely objections and only 2 requested exclusion). Therefore, the second *Grinnell* factor weighs in favor of final approval.

31. The parties have completed enough discovery to recommend the supplemental settlement. The pertinent question is "whether counsel had an adequate appreciation of the merits of the case before negotiating." *Torres*, 2010 WL 5507892, at *5 (quoting *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 537 (3d Cir. 2004)). Here, over the course of more than a year before entering into settlement discussions, Plaintiffs obtained substantial informal and formal discovery, including documentary evidence, deposition testimony, and data on Class Members' damages. The third Grinnell factor weighs in favor of final approval.

32. The risk of establishing liability and damages further weighs in favor of final approval. "Litigation inherently involves risks." *In re Painewebber Ltd P 'ships Litig.*, 171 F.R.D. 104, 126 (S.D.N.Y. 1997). One purpose of a settlement is to avoid the uncertainty of a trial on the merits. *In re Ira Haupt & Co.*, 304 F. Supp. 917, 934 (S.D.N.Y. 1969). Here, the fact-intensive nature of Plaintiffs' claims and Defendant's defenses thereto presents risk. The settlements eliminate this uncertainty. The fourth and fifth *Grinnell* factors weigh in favor of

final approval.

33.     The risk of obtaining and maintaining class status throughout trial also weighs in favor of final approval.  A motion to decertify the class would have likely required extensive discovery and briefing, possibly followed by an appeal, which would have required additional rounds of briefing.  Settlement eliminates the risk, expense, and delay inherent in this process. The sixth *Grinnell* factor weighs in favor of final approval.

34.     The Defendants' ability to withstand a greater judgment is not clear.  Certainly, the settlement eliminated the risk of collection, as the Supplemental Settlement Agreement identifies the method for payout of the Supplemental Settlement Payment. Moreover, even if protracted litigation would have yielded a judgment larger than the Supplemental Settlement Payment and although Defendant might be able to withstand a judgment greater than the Supplemental Settlement Payment, "standing alone, [this] does not suggest that the settlement is unfair."  *See Austrian and German Bank*, 80 F.Supp.2d at 178 n. 9 (citing *In re PaineWebber Ltd. Partnerships Litig.*, 171 F.R.D. 104, 129 (S.D.N.Y. 1997)) ("[T]he fact that a defendant is able to pay more than it offers in settlement does not, standing alone, indicate the settlement is unreasonable or inadequate."). The seventh *Grinnell* factor is neutral and does not preclude final approval since all of the other *Grinnell* factors favor final approval.

35.     The substantial amount of the supplemental settlement weighs strongly in favor of final approval. The determination of whether a settlement amount is reasonable "does not involve the use of a 'mathematical equation yielding a particularized sum.' Frank, 228 F.R.D. at 186 (quoting *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d at 178). "Instead, `there is a range of reasonableness with respect to a settlement — a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs

necessarily inherent in taking any litigation to completion."' *Id* (quoting *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972)). In this case, based on Plaintiffs' pre-settlement investigation, the Supplemental Class Members will receive substantial compensation for the alleged underpayment of wages under the terms of the Supplemental Settlement Agreement. The eighth and ninth *Grinnell* factors favor final approval.

**Approval of the FLSA Settlement**

36. The Court hereby approves the Supplemental FLSA settlement.

37. The standard for approval of an FLSA settlement is lower than for a Rule 23 settlement because an FLSA settlement does not implicate the same due process concerns as does a Rule 23 settlement. *McKenna v. Champion Intl Corp.*, 747 F.2d 1211, 1213 (8th Cir.1984); Torres, 2010 WL 5507892, at *6; Clark, 2010 WL 1948198, at *7.

38. Courts approve FLSA settlements when they are reached as a result of contested litigation to resolve bona fide disputes. *Clark*, 2010 WL 1948198, at *7; *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1353 n.8 (11th Cir. 1982). "Typically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of the settlement." *Torres*, 2010 WL 5507892, at *6 (citations omitted). If the proposed settlement reflects a reasonable compromise over contested issues, the settlement should be approved. *Lynn's Food Stores*, 697 F.3d at 1354; *Clark*, 2010 WL 1948198, at *7.

39. The Court finds that the Supplemental FLSA settlement was the result of contested litigation and arm's length negotiation.

**Dissemination of Notice**

40. Pursuant to the Preliminary Approval Order, dated July 26, 2014 (Dkt. No. 104), the Supplemental Class Notices were sent by first-class mail to each identified Supplemental Class Member at his or her last known address (with re-mailing of returned Supplemental Class

Notices). Baldwin Decl. ¶¶ 4-8. The Court finds that the Supplemental Class Notices fairly and adequately advised Supplemental Class Members of the nature of the action, a description of the Class, the Supplemental Class Members' right to exclude themselves from the settlement, and the right of all Supplemental Class Members to object to the settlements, to be represented by counsel, and to appear at the fairness hearing. Supplemental Class Members were provided the best notice practicable under the circumstances. The Court further finds that the Supplemental Class Notices and distribution of such Notices comported with all constitutional requirements, including those of due process.

41. "Final Approval" of the Supplemental Settlement or the "Effective Date" shall be thirty-one (31) days after the Court has entered Judgment, if no party has sought rehearing, reconsideration, or appellate review; or if rehearing, reconsideration and appellate review is sought, the day after any and all avenues of rehearing, reconsideration and appellate review have been exhausted and no further rehearing, reconsideration or appellate review is permitted, and the time for seeking such review has expired and the Judgment has not been subject to fundamental change as a result of rehearing, reconsideration or appellate review. Settlement Agreement ¶ I.9.

42. The Supplemental Settlement Administrator Fees and the Net Aggregate Supplemental Settlement Amount will be deducted from the Maximum Supplemental Settlement Amount. Settlement Agreement ¶ III.36.

43. Defendants shall pay the Net Aggregate Supplemental Settlement Amount, as that term is defined in Paragraph 1.12 of the Supplemental Settlement Agreement, to the Settlement Administrator within seven (7) days of the Effective Date. *Id*

44. The Settlement Administrator will pay the Participating Supplemental Class

Members the amounts due under the Supplemental Settlement Agreement within seven (7) days after receiving the Net Aggregate Supplemental Settlement Amount from Defendants. *Id* .

45. Deductions for the Participating Class Member's share of federal, state and local income tax withholding and the employee share of the FICA tax will be made according to Subparagraph 36(g)(i) through (vi) of Paragraph III of the Supplemental Settlement Agreement. Tax attribution and reporting for the Net Supplemental Settlement Award will be governed by the same.

46. This action shall be dismissed on the merits with prejudice and all Participating Supplemental Class Members shall be and are permanently barred from prosecuting against the Releasees as defined in the Supplemental Settlement Agreement at Subparagraph 51 of Paragraph V.

47. Though the Court retains jurisdiction over this action for the purpose of enforcing the Settlement Agreement and Supplemental Settlement Agreement, the judgment is a Final Judgment in accordance with the Settlement Agreement and Supplemental Settlement Agreement.  The parties shall abide by all terms of the Settlement Agreement, the Supplemental Agreement and this Order.

```
The Clerk of Court is directed to terminate all pending motions, adjourn
all remaining dates, and to close this case.
```

**SO ORDERED:**

*[signature: Katherine Polk Failla]*

---
Hon. Katherine Polk Failla
Date: October 30, 2014

17